[No. 32570. Department One. March 19, 1954.]

*In the Matter of the Appeal of* EMMA SCHMITZ *From the Order Confirming the Assessment Roll for the Improvement of 56th Avenue S. W. et al., as Set Forth in Ordinance No. 81214 of the City of Seattle.*[1]

[1]Reported in 268 P. (2d) 436.

*Catlett, Hartman & Jarvis,* for appellant.

*A. C. Van Soelen* and *John A. Logan,* for respondent.

WEAVER, J.—This is an appeal from a portion of the decree of the superior court confirming, as modified, the assessment roll of local improvement district No. 5957 of the city of Seattle, for the construction of the 56th avenue S.W. sewer.

The crux of this appeal is in the assignment of error directed to the court's finding of fact that

". . . the objector [appellant] has failed to sustain the burden of proof by a preponderance of the evidence and the court finds that the benefits to the property [owned by appellant] are in an amount equal to or in excess of the amount assessed and therefore sustains the assessments as levied on the above two mentioned tracts."

We will refer to the two pieces of property owned by appellant as tract A and tract B. Located in West Seattle, they face to the west and overlook Puget Sound.

Tract A contains between 6.9 acres and 8.4 acres. It is an irregular eleven-sided area. Generally, the major portion of the tract, which lies north and south, resembles a quadrilateral. The remainder of the tract extends northward, from the west one hundred fifty feet of the north line of the

larger portion. The terrain is rough—cut by hills and gulches. The land slopes from the north to south and from east to west. The highest elevation on the tract is three hundred twenty-five feet above sea level; the lowest elevation is approximately one hundred and thirty feet. These two elevations are about nine hundred and sixty feet apart. The western side of the property is cut by a bluff so that a portion of the tract is below the bluff.

Tract B, substantially rectangular in shape, contains approximately one half an acre. Its southern corner is one hundred and sixty feet from the northern corner of tract A. Considerably more than one half of tract B is below the crest of the same bluff which traverses tract A. The crest of the bluff on tract B is approximately three hundred and forty feet above sea level; the southwest corner of the tract, which is about one hundred and twenty feet from the crest of the bluff, has an elevation of two hundred and forty feet.

The sewer in question, which extends north and south, is adjacent to the east side of the north portion of tract A and substantially bisects the south portion of the tract. The sewer is adjacent to the east side of tract B. In 1951, the city condemned a right of way for the sewer across the south portion of tract A.

The present controversy reaches us in the following manner:

The sewer assessment roll of the district, as published, assessed $11,846.65 against tract A, and $1,093 against tract B. At the hearing before the city council upon the assessment roll, at which meeting appellant was represented, the city engineer reported that the roll contained an assessment excess of $4,531.18. He recommended reduced assessments for certain properties. His recommendations were adopted. This resulted in an assessment of $11,724.27 against tract A and $789.95 against tract B. By ordinance No. 81214, the city council confirmed the roll and found

". . . that each of the lots, tracts, parcels of land and other property shown upon said roll *is hereby declared to be specially benefited by said improvement in at least the amount charged against the same . . .*" (Italics ours.)

(In *Hargreaves v. Mukilteo Water District, infra,* we called attention to the fact that "because the revisers, in the preparation of the Revised Code of Washington, made changes in the wording of the statutes involved" (assessments by local improvement districts) only Remington's Revised Statutes would be cited. ʼWe are forced to follow the same procedure in this opinion, but in so far as possible, we will, for convenience, cite the revised code for the purpose of reference only.)

Appellant had filed her written objections with the city council against the assessment roll. Rem. Rev. Stat., § 9373 [*cf.* RCW 35.44.080]. Upon confirmation of the roll, appellant gave notice of appeal to the superior court. Rem. Rev. Stat., § 9374 [*cf.* RCW 35.44.200, *et seq.*]. After trial, the superior court confirmed the assessments against appellant's property. Rem. Rev. Stat., § 9374 [*cf.* RCW 35.44.250]. Appellant now brings the record to this court for review. Rem. Rev. Stat., § 9374 [*cf.* RCW 35.44.260]. We are authorized by statute to

"... correct, change, modify, confirm or annul the assessment in so far as the same affects the property of the appellant." Rem. Rev. Stat., § 9374 [*cf.* RCW 35.44.260].

In *In re Shilshole Avenue,* 94 Wash. 583, 162 Pac. 1010 (1917), we repeated the rule previously announced in *In re Fifth Avenue & Fifth Avenue South,* 66 Wash. 327, 329, 119 Pac. 852 (1911), that

"... the amount to be assessed against property within the district and proper to be assessed was an appropriate subject of judicial inquiry, and, following a long line of cases, the judgment of the court would not be disturbed or modified unless the evidence so preponderates against the judgment as to indicate an arbitrary disposition on the part of the commissioners or the court." (p. 593)

We are mindful of the rule announced in *Peterson v. Schoonover,* 42 Wn. (2d) 621, 622, 257 P. (2d) 209 (1953), that:

"Our first duty is not to resolve a conflict of fact—that is the province of the trial judge. Our primary duty is to decide whether the opposing evidence exceeds in weight

the evidence supporting the finding. If it does exceed in weight, then it can be said that the opposing evidence preponderates, and it is from the opposing evidence that a different finding springs."

■ The rule is based upon the theory that the trial court, having the witnesses before it, is usually in a better position to arrive at the truth than is the appellate court. There are situations, however, when the positions are at least equal. See *Peters v. Dulien Steel Products,* 39 Wn. (2d) 889, 239 P. (2d) 1055 (1952). The instant case is one of them. We are not concerned with the veracity and credibility of witnesses. The issue is whether certain expert *opinions,* based upon existing facts, should be given greater weight, and can be said to preponderate over other expert opinions based upon the same facts. In such a situation, the opportunity of this court to study the exhibits, examine the figures, and consider the opinions of the experts is equal to that of the trial court.

■ Under the circumstances, this equality of opportunity is neither dulled nor lost by the trial court's view of the premises. The only purpose of a view of the premises by the trial judge is to aid him in his understanding of the evidence introduced in the case.

Before analyzing the pertinent testimony, we state the rules of law which must govern our conclusion.

■ Under the local improvement district statutes, only that portion of the cost of the local improvement which is of special benefit to the property can be levied against the property. *In re California Avenue,* 30 Wn. (2d) 144, 190 P. (2d) 738 (1948).

■■ Property not benefited by local improvements may not be assessed, and special assessments for special benefits cannot substantially exceed the amount of the special benefits. *Viegle v. Spokane,* 78 Wash. 359, 139 Pac. 33 (1914); *In re Shilshole Avenue,* 94 Wash. 583, 162 Pac. 1010 (1917); *In re Sixth Avenue,* 155 Wash. 459, 471, 284 Pac. 738 (1930); *Hargreaves v. Mukilteo Water Dist.,* 43 Wn. (2d) 326, 261 P. (2d) 122 (1953); and cases cited.

 The amount of the special benefits attaching to the property, by reason of the local improvement, is the difference between the fair market value of the property immediately *after* the special benefits have attached, and the fair market value of the property *before* the benefits have attached. *Overbridge Realty Corp. v. Hackensack,* 13 N. J. Misc. 702, 180 Atl. 666 (1935).

The fair market value

". . . means neither a panic price, auction value, speculative value, nor a value fixed by depressed or inflated prices. We have defined it as the amount of money which a purchaser willing, but not obliged, to buy the property would pay an owner willing, but not obligated, to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied." *Donaldson v. Greenwood,* 40 Wn. (2d) 238, 252, 242 P. (2d) 1038 (1952).

Appellant's experts, Harry R. Fenton and Norman De-Meyer, testified that the fair market value of tract A *after* the installation of the sewer was $22,925. They fixed the fair market value of this tract prior to the installation of the sewer at $19,175.

Mr. Fenton is a graduate in economics of the University of Washington. He has been a real-estate salesman, broker, and appraiser since 1933. He has appraised for the city of Seattle, the Federal government, the department of justice, the army engineers, King county, the state of Washington, and various private individuals and corporations. He is a member of the American Institute of Real Estate Appraisers of the National Association of Real Estate Boards, entitled to use the designation "M.A.I.", a designation earned by examination in the theory and practice of appraising property. At the time of the trial, he was president of the Washington chapter of the American Institute of Real Estate Appraisers.

Mr. DeMeyer has been in the real-estate business and has acted as an appraiser of real property since 1927. For the past thirteen years, he has operated his business and has sold properties in West Seattle, the location of the properties in question.

■ Mr. Fenton and Mr. DeMeyer occupy a unique position in this case. In 1951, the city condemned a right of way ·for this sewer across tract A. In that proceeding, Mr. Fenton and Mr. DeMeyer were presented *by the city of Seattle* (respondent in this case) and accepted by the court as experts qualified to appraise tract A and to aid in determining the value to be paid for the right of way for this sewer. After thorough investigation and inspection, they testified in the condemnation proceeding that the fair market value of tract A was $20,000. Their present valuation of $19,175 is consistent, for they have taken into consideration the value of the easement for the sewer.

We will not prolong this by detailing the evidence of the many foundational factors used by Mr. Fenton and Mr. DeMeyer as a basis for their expert opinions of the fair market value of this property, both before and after the sewer had been installed. It is only necessary to state that they were sufficient and placed their conclusions squarely within the rules of law which govern this case.

We are constrained to hold that appellant's evidence exceeds in weight the evidence introduced by respondent; that it preponderates over the finding of the trial court which we have quoted; and that from appellant's evidence springs the fact that the local improvement district assessments substantially exceed in amount the value of the special benefits inuring to appellant's property, by reason of the local improvement.

Our conclusion is supported by four reasons which we discuss.

The first of the city's qualified experts has been a realtor since 1924. He is in the mortgage loan business and is an appraiser. He, too, is a member of the American Institute of Real Estate Appraisers of the National Association of Real Estate Boards and a past president of the Washington chapter. The second qualified expert, testifying for the city, is a real-estate broker and appraiser operating on Mercer Island. For thirteen and a half years, he did business within the limits of the city of Seattle.

First: The first fallacy in respondent's theory of the case, which results in the preponderance of appellant's evidence, is the studied effort by the city, on direct examination of its qualified expert witnesses, to avoid a determination of the *fair market value* of tract A and tract B, after the installation of the sewer. In response to the question,

". . . in your considered opinion is the property enhanced in value to the extent of that assessment?"

the witnesses were permitted, over objection, to answer in the affirmative. To ask a witness what special benefit a parcel of property has received, without stating to him what standard is to be used in measuring that benefit, is to call for a conclusion which may, or may not, have a correct fact basis. On direct examination, neither of the witnesses testified to their opinion of the fair market value of either tract, after the sewer installation.

On cross-examination by appellant's counsel, one witness fixed the fair market value of tract A at $20,500, the other witness at $20,880. It is apparent, from the record, that they reached this conclusion by adding the amount of the local improvement assessment to $8,700, which, they had testified, was the fair market value of tract A *before* the sewer was installed. Thus, they assumed the conclusion which the court should determine from the evidence. A valuation so determined is deficient and cannot be inserted in the formula by which the enhanced value of the property is measured.

Second: The next fallacy in respondent's theory of the case is found by a review of the evidence which discloses the factors considered by its expert witnesses in fixing the fair market value of tract A at $8,700, *before* installation of the sewer.

The trial court found that the property

". . . is presently in condition for improvement, said improvement being physically and economically feasible."

This is supported by the evidence. Although it is unplatted, it is potential residential property, both before and after the

installation of the sewer. The parties have introduced large, detailed, topographical maps of the property. Appellant's map (twenty-nine by thirty-eight inches) purports to plat tract A into fifteen residential sites and tract B into one. Respondent's map (sixty inches by ninety-two inches) purports to plat tract A into thirty-one building sites and tract B into two.

These maps serve two purposes: First, they give the court an excellent picture of the physical characteristics of the land; and second, they overwhelmingly support the conclusion that the property was potential residential property before the sewer was installed. The sewer did not transform it from "raw land" to residential property.

The record shows that, in fixing the fair market value of tract A at $8,700 before the sewer, respondent's witnesses relegated the residential potentiality of the land to a minor position and gave it little or no consideration. Instead, they reached their conclusion by considering what it would cost to develop the land.

It would prolong this opinion beyond bounds to quote the testimony of the city's witnesses describing this as "acreage" and "raw land." This is illustrated by one witness when he testified on cross-examination:

"The value of the land in the raw of $1,250 an acre is all that a subdivider could *afford to pay* for that type of ground, taking into consideration that it is going to cost him, before he gets through with all of the improvements, in the neighborhood of $69,000.00 or $70,000.00. At that point the land is worth $10,000.00 an acre, or $2,500.00 a lot. And if you want to deduct the cost of the improvements, then you get back to the cost of the raw land." (Italics ours.)

This does not meet the definition of "fair market value" as defined by the authorities. What respondent attempts is similar to subtracting two fractions without first reducing them to a common denominator.

These two fallacies result in the untenable conclusion in this case that making sewer connections available to tract A more than doubles its fair market value.

Third: We are not impressed with the city's argument that the valuation of this land in the prior condemnation proceeding is immaterial. The principle involved transcends any theory of estoppel. It is true, this is an adversary proceeding; but it is one between a citizen and a branch of his government impressed with a public trust. When dealing with a citizen, it does not become the city to "blow hot and cold" as serves its convenience and the end it desires to accomplish. We cannot ignore the correctness of the method used by appellant's expert witnesses nor overlook the consistency of their opinions.

Fourth: Finally, our conclusion is supported by evidence which indicates that the assessments in question *may* have been made by the city council upon a fundamentally wrong basis.

Since this case must be returned to the city council for further proceeding, we point out that in *Hargreaves v. Mukilteo Water District,* 43 Wn. (2d) 326, 333, 261 P. (2d) 122 (1953), this court said that,

" . . . unless otherwise indicated in the ordinance ordering the improvement, the portion of the cost and expense of the improvement chargeable against the property specially benefited by the improvement shall be assessed upon all of the property so benefited

" ' . . . in accordance to the special benefits conferred on such property in proportion to area and distance back from the marginal line of the street or other public way or area improved.' " Rem. Supp. 1947, § 9365 [RCW 35.43-.080].

Unless otherwise indicated by the ordinance (Rem. Supp. 1947, § 9365 [*cf.* RCW 35.43.080]), the special benefits received by the properties must be spread by the zone and termini method as defined and set forth in the statute. Rem. Supp. 1947, § 9365 [*cf.* RCW 35.44.030].

Counsel for the city stipulated that only the evidence of Mr. Royal, principal engineer in charge of administration of the city's engineering department, was presented to the city council at the time the assessment roll was adopted.

On the trial of this case, Mr. Royal made several references to the property being assessed at "$5.00 a front foot." For example he testified:

"I would like to state that we pointed out to the City Council prior to the creation of this district . . . that the property should not be charged in excess of a normal rate, *which we determined at that time as $5.00 a front foot,* and that the City Council, while there was actually no City benefit from this sewer, should pay the difference between the cost and this fair rate. If that rate is a fair one, it must be assumed that it is fair to all of the property in the district, except as to certain properties which by reason of the topography were not benefited to the extent of that $5.00 a foot."

This does not meet the requirements of the statutory method of apportioning assessments for special benefits resulting from local improvements, by the zone and termini method.

That which we have said concerning tract A also applies equally to tract B.

The judgment appealed from is reversed, with instructions to vacate the assessments levied by the assessment roll of local improvement district No. 5957 of the city of Seattle against the properties owned by appellant, Emma Schmitz, more particularly described in the judgment entered herein May 18, 1953, and described on page sixty-one of said assessment roll. The proceeding is remanded to the council of the city of Seattle, with directions to reassess appellant's property in accordance with the statutes and the views herein expressed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.