[No. 33441.   Department Two.   July 19, 1956.]

*In the Matter of the Petition of* THE CITY OF SEATTLE *to Acquire Certain Property in Moore's Five Acre Tracts and the Portions of Vacated Francis Avenue Adjoining.*[1]

[1]Reported in 299 P. (2d) 843.

*A. C. Van Soelen* and *G. Grant Wilcox*, for appellant.

*Weter, Roberts & Shefelman*, for respondents Desimone *et al.*

*Preston, Thorgrimson & Horowitz*, for respondent Suburban Propane Gas. Co.

DONWORTH, C. J.—This is an appeal by the city of Seattle from the judgment entered in a condemnation proceeding fixing the "just compensation" which the city must pay in order to acquire the fee simple title to a strip of land needed for an electric transmission line.

The owners of the property and the lessee of a portion thereof have both filed briefs in support of the judgment.

The basis of the city's appeal is stated in its brief as follows:

"This appeal is based upon the excessiveness of the award. Appellant contends that the excessiveness of the award resulted from the lack of evidence or reasonable inference from the evidence to justify the trial court's findings, and the court's misuse of the view of the subject property and surrounding area."

There is no dispute regarding the basic facts; the issue being whether the opinions as to the value of the property taken expressed by the two expert witnesses called by the city are more convincing than those given by respondents' two expert witnesses. The trial court found that the just compensation was the value of the property as expressed by

one of respondents' experts whose opinion as to value was the highest of any of the four expert witnesses.

Generally speaking, the portion of respondents' property sought to be condemned by the city is a strip of land varying from sixty to seventy-five feet in width extending across the northerly end of the property. Prior to the taking, the length of the entire tract was about eighteen hundred feet from east to west, and it varied in width from north to south between two hundred fifty and six hundred feet. The property (which is suitable for industrial purposes) is situated on the west side of east Marginal way at its junction with Pancrantz road, which is just south of the city limits of Seattle.

For convenience in considering the value, the property was divided into three parcels, the most easterly portion being designated as parcel A, the center portion as parcel B, and the westerly portion as parcel C. The parties agreed that the only severance damages involved related to parcel C and amounted to twenty-five per cent of its value.

The trial court found that the value of the strip of land taken by the city, plus severance damages to parcel C, was $69,005.70. To this sum, there was added the undisputed cost to respondents of moving and readjusting certain improvements conceded to total $17,420. Consequently, the amount of judgment from which the city is appealing is $86,425.70.

The city's assignments of error are:

"1. The court erred in Finding of Fact X insofar as it found the damage due the respondents for the taking and damaging of their property, exclusive of the expense of moving and readjusting structures on the property taken, to be the sum of $69,005.70.

"2. The court erred in denying the appellant's motion for a new trial.

"3. The court erred in entering a judgment and decree of condemnation in the sum of $86,425.70."

Respondents contend that we cannot consider the first assignment of error because the portion of finding of fact No. 10 claimed to be erroneous is not set out verbatim in appellant's brief as required by Rule on Appeal 43, 34A Wn. (2d) 47, as amended, effective January 2, 1953.

■ In *Paulson v. Higgins*, 43 Wn. (2d) 81, 260 P. (2d) 318, 266 P. (2d) 800, and numerous cases cited therein, and in cases subsequently decided, we have held that Rule 43 applied to the records then before us, and that, where the portion of the findings which were assigned as error were not set out in appellant's brief, they would be accepted as verities.

■ In the case at bar, however, there is no dispute as to any facts except the ultimate fact consisting of the figure $69,005.70, which was found by the trial court to be the just compensation for the property taken. Thus, the city has literally complied with Rule 43 by setting out verbatim in its brief the only portion of finding No. 10 which it claims to be erroneous.

■ Another corollary rule which distinguishes the instant case from such cases as *Paulson v. Higgins, supra*, is well stated in *In re Schmitz*, 44 Wn. (2d) 429, 268 P. (2d) 436, in which we said:

"We are mindful of the rule announced in *Peterson v. Schoonover*, 42 Wn. (2d) 621, 622, 257 P. (2d) 209 (1953), that:

" 'Our first duty is not to resolve a conflict of fact—that is the province of the trial judge. Our primary duty is to decide whether the opposing evidence exceeds in weight the evidence supporting the finding. If it does exceed in weight, then it can be said that the opposing evidence preponderates, and it is from the opposing evidence that a different finding springs.'

"The rule is based upon the theory that the trial court, having the witnesses before it, is usually in a better position to arrive at the truth than is the appellate court. There are situations, however, when the positions are at least equal. See *Peters v. Dulien Steel Products*, 39 Wn. (2d) 889, 239 P. (2d) 1055 (1952). The instant case is one of them. We are not concerned with the veracity and credibility of witnesses. The issue is whether certain expert *opinions*, based upon existing facts, should be given greater weight, and can be said to preponderate over other expert opinions based upon the same facts. In such a situation, the opportunity of this court to study the exhibits, examine the figures, and consider the opinions of the experts is equal to that of the trial court.

"Under the circumstances, this equality of opportunity is neither dulled nor lost by the trial court's view of the premises. The only purpose of a view of the premises by the trial judge is to aid him in his understanding of the evidence introduced in the case."

We need not prolong this opinion by detailing the testimony of the four expert witnesses. We have read their testimony with care and, following the rule in *In re Schmitz, supra*, have weighed the opinions of each in the light of his training, experience, and background, and have considered the reasons given by each in support of his opinion as to the value of the property taken by the city.

The city's two experts, after stating their respective opinions as to the per square foot value of each parcel and allowing twenty-five per cent severance damage to parcel C, testified to a total value of thirty-six thousand dollars. Respondents' two experts, following the same procedure, testified to total values of $63,175.63 and $69,005.70, respectively. The trial court's judgment was based on the highest valuation given by any of the expert witnesses.

From our review of the record, and considering particularly the testimony concerning the fairly recent sales and leases of comparable property located in the general vicinity of respondents' property, we cannot find that the trial court erred in adopting the valuation testified to by one of respondents' expert witnesses, to wit, $69,005.70, as just compensation for the property taken and damaged.

We next consider the city's second assignment of error, *i.e.*, that the trial court erred in denying its motion for new trial. The principal complaint is that the trial court misused its view of the property as substantive evidence instead of merely to enable it to better understand the testimony of the witnesses.

In order to pass upon the city's contention, we must have in mind the testimony concerning the comparative situation of respondents' property and that of the Jannsen-Coast Storage property which abuts the former on part of its north line. There is a railroad spur track on the west side of east Marginal way. The Jannsen-Coast Storage Company bought

this property less than thirty days prior to the trial of this case. It has no frontage on east Marginal way but has access thereto via an easement twenty-four feet wide and seven hundred feet long.

Mr. Atwood, one of respondents' expert witnesses, testified that the subject property had railroad trackage, but that it was impossible because of the narrow easement to get such trackage into the Jannsen-Coast Storage property from east Marginal way. On cross-examination, this expert testified that the Jannsen-Coast Storage Company "contemplated" railroad trackage when it purchased the property. Respondents argue that the witness only meant that the parties to the sale gave consideration to the spur track problem—not that they considered it feasible to bring in a spur from the tracks on east Marginal way.

After the trial judge had viewed both properties (following the close of the testimony) in the presence of counsel for the three parties, he stated his views on the trackage access issue in his oral decision as follows:

"Gentlemen, I have been over my notes again in the light of the arguments. I might make a few comments on the testimony of the experts, some of the opinions expressed by them.

"If it had not been for the view this morning, I think it would be quite difficult to resolve some of the conflicts in these opinions.

"In the presence of counsel this morning we walked over the area in front of the subject property where those railroad spurs go in and it is quite obvious from looking at it that what Mr. Atwood had to say was absolutely justified. This property has trackage facilities and it would be impossible to get a spur into the Jannsen-Coast Storage property in view of the existing available frontage.

"Now, I could conceive that it would be possible for the Jannsen-Coast Storage people, if they desired trackage, to make some sort of arrangement with their neighbor on the north to get a switch in the spur that services that property, but that is something else again. The property as it stands has not got trackage and could not get trackage in there.

"The subject property, with very close to six hundred feet frontage, has all the room that it needs. I imagine there

could be at least two, possibly three, spurs put in there in case of necessity.

"I cannot reconcile the testimony of the City's experts in feeling that that tract known as 'B'-'C' is worth less than the Jannsen-Coast Storage property, with my view of the property. I feel that the respondent's witnesses have a much more persuasive point of view on that aspect. I think the 'B'-'C' tract must be worth at least as much as the Jannsen-Coast Storage property. The question in my mind is whether or not it is reasonable to say that the Jannsen-Coast Storage property is worth 31¢ per square foot and simply because of the trackage and access, 'B'-'C' is worth 40¢ per square foot. That is a differential of one-third of the value of the Jannsen-Coast Storage property.

"Now, that Jannsen-Coast Storage property is nice property. It is filled to a perfect level; it is absolutely level with East Marginal Way. The only disadvantage that it has, so far as I could see, and so far as I can learn from the testimony, is restricted access.

"One-third of the entire value seems to me to be a fairly high price for that access. However, the real estate men say it is worth that. That is, those that I think have the better viewpoint and I don't know that it makes much sense for the court, who knows nothing of these things of themselves, to arbitrarily subtract a certain sum from the opinion of men who have specialized in this business for a great many years. It is a little bit presumptuous, I think."

■ Appellant cites *In re Schmitz, supra,* and *Booten v. Peterson,* 47 Wn. (2d) 565, 288 P. (2d) 1084, in support of its position. There is no question that the purpose of the trial court's view of the property is to aid it in understanding the evidence, but, in the present case, we cannot find that the trial court violated this rule. The trial judge heard testimony that spur trackage was available to respondents' property and not available to the Jannsen-Coast Storage property adjoining it on the north. He also heard conflicting testimony as to whether respondents' property was substantially level or would need to be graded and filled before it would be suitable for industrial use. When he viewed both properties, he naturally received some impression as to which testimony was correct.

■ We think that the trial court in this case used its

view of the property for proper purposes, *i.e.*, to assist it in understanding the testimony. Here, the trial court did not ascertain any new facts from its view (as was done in *Booten v. Peterson, supra*) but considered the testimony in the light of what it saw.

The judgment is affirmed.

HILL, WEAVER, and ROSELLINI, JJ., concur.