55 Wn.2d 250 (1959)
347 P.2d 875
In the Matter of the Estate of AGNES M. COATES, Deceased.
EVLEEN McGILCUDY, Respondent,
v.
SEATTLE-FIRST NATIONAL BANK, as Executor, Appellant.[1]
No. 34370.
The Supreme Court of Washington, En Banc.
December 17, 1959.
Barker & Day and William J. Walsh, Jr., for appellant.
Lester Stritmatter, for respondent.
DONWORTH, J.
Agnes M. Coates died testate in Aberdeen, Washington, on August 14, 1952. The terms of her will, dated November 25, 1949, directed that all of her estate (originally appraised at $136,509.04) be distributed to her sister, respondent herein. The testatrix appointed appellant as executor, to serve without bond and without the intervention of the court.
On December 11, 1952, upon appellant's petition, the will was admitted to probate in the superior court for Grays Harbor county, and appellant qualified to act as executor.
Respondent, on May 11, 1956, petitioned the court for an order directing that appellant appear before the court and show cause why a final account should not be submitted and why the actions of appellant in the handling of this estate should not be subjected to review and approval or disapproval by the court.
In her petition, respondent alleged in part, as follows:
*253 "That on or about November 25, 1949, the said Agnes M. Coates was advised and counselled by the trust officers of said bank with respect to the drafting of a will for the benefit of this petitioner; that said officials then accompanied the testatrix to the offices of Barker and Day, Attorneys at Law, whose offices were directly above the bank, for the purpose of drafting a will."
And, further:
"That your petitioner is informed and alleges and believes that during the course of this probate the said Executor has paid itself the sum of $7500.00 as Executor's fees and its attorneys the sum of $7500.00 as attorneys' fees; that said estate was inventoried and appraised at the sum of $136,509.04 and that the minimum bar schedule of Grays Harbor County provides as attorney's fees of $4250.00 and an Executor's fee of $2125.00; that the fees as allowed and paid by the Executor, if true, are so exhorbitant as to amount to a misuse of the trust placed in said executor by the deceased and to amount to a fraud upon the estate."
Appellant appeared specially and moved to quash the petition on the ground that the court was without jurisdiction of the subject matter. This motion was denied. After the denial of other preliminary motions, appellant answered the petition, admitting that it had paid itself $7,500 as executor's fees and a like amount to its attorneys as fees for their services, but generally denying respondent's averments of bad faith. In its answer, appellant alleged that all of the remaining assets had been delivered to respondent on June 25, 1956, in final distribution and that the estate was, in all respects, closed.
The issues joined by appellant's answer were brought on for hearing before the probate court on August 16, 1956. At the commencement of this proceeding, counsel for respondent stated:
"The main question before the Court now is whether the fees are excessive under the circumstances, and whether the Court has jurisdiction."
At the conclusion of the hearing on that day, the court stated:
"... I have heard enough this afternoon that I am satisfied that the work done by the executor, that is, from *254 the time the executor took charge of the estate until it was completed, it was well done. There is no longer any question about that. I am satisfied that it was done carefully and that it was well done and the welfare of the estate was kept in mind at all times."
However, further proceedings were thereafter had for the reception of evidence on other matters, particularly that relating to the reasonableness of the amounts of the executor's and its attorneys' fees, paid by appellant and charged against the estate.
After rendering its memorandum opinion, the trial court, in findings Nos. 6 and 7, found, in part:
"... By the time of the hearings the executor had completed its duties and turned the residue of the estate over to the heir, retaining a $7500.00 fee as executor and a $7500.00 fee for its attorneys. The only problem for the court remaining as a result of the hearings is the question of the reasonableness of the fees. The executor has objected to the authority of the court to assume jurisdiction in this matter. The Court finds from the record that this estate has been handled only partially as a non-intervention estate. Consequently the Court feels it has been invested with jurisdiction by the executor itself. In addition the Court finds the fees claimed and withheld both for the executor and the Attorneys is excessive to the point that this court must assume jurisdiction.
"Under the fee schedule in Grays Harbor County which the Court feels must govern in this case, the normal attorney's fee would be $4250.00 and the executor's fee $2125.00. Testimony of local attorneys is to the effect that the fees claimed and withheld were excessive. The Court has elected to accept their testimony."
The court did, however, find that the attorneys performed additional services beyond the usual legal work required for an estate of this size and character, and consequently allowed an additional $1,000 (above the minimum fixed by the local bar schedule), or a total of $5,250 for legal services rendered to the executor. Appellant executor was found to be entitled to $2,000 for additional services performed by it (beyond those contemplated under the fee schedule), and a total fee of $4,125 was, therefore, allowed appellant for its services.
*255 From the decree directing that the fees in excess of these respective amounts be refunded to the estate and distributed to respondent, the executor has appealed.
The critical assignments of error are directed to the court's findings of fact under which it assumed jurisdiction and proceeded to determine the reasonableness of the above mentioned fees. Appellant has steadfastly maintained that, in the absence of its application to the court for a determination of these fees  and there has been none  the probate court is without jurisdiction to determine them, or to either approve or disapprove the amounts paid by appellant to itself or its attorneys.
The finding that this estate has been handled only partially as a nonintervention estate is based, in part, on the fact that certain creditors' claims against the estate were presented by the executor to the probate court for approval.
These claims were all approved by appellant and the court and were paid by appellant prior to the filing of its petition for the court's order of solvency and the entry of that order on August 27, 1953.
RCW 11.68.010 provides, in part:
"In all cases where it is provided in the last will and testament of the deceased that the estate shall be settled in a manner provided in such last will and testament, and that such estate shall be settled without the intervention of any court or courts, and where it duly appears to the court, by the inventory filed, and other proof, that the estate is fully solvent, which fact may be established by an order of the court on the filing of the inventory, it shall not be necessary to take out letters testamentary or of administration, except to admit the will to probate and to file a true inventory of all the property of such estate and give notice to creditors and to the body having charge of the collection of inheritance tax, in the manner required by law."
This court, in In re Peabody's Estate, 169 Wash. 65, 13 P. (2d) 431 (1932), attempted to clearly point out the manner in which the superior court obtained and lost jurisdiction in the administration of estates involving nonintervention wills under this statute. What was there said concerning *256 Mr. Peabody is equally applicable to Mrs. Coates, the testatrix in the instant case. Concerning jurisdiction of the subject matter, we said:
"To make this clear, let us illustrate: (a) Mr. Peabody in his lifetime made a non-intervention will, but no court then had jurisdiction of his estate. (b) Mr. Peabody died. Still no court had jurisdiction of his estate until, after his death, by proper petition setting up the jurisdictional facts, filed in the superior court of the proper county, that court, by reason of that application to it, obtained jurisdiction of the estate. (c) When the order of solvency was properly entered, the further administration of the estate was by the statute relegated exclusively to the executors, and the probate court, which had before had jurisdiction, then lost its jurisdiction of the estate. (d) Thereafter, in order for the court to regain jurisdiction of the estate, its jurisdiction must be again invoked by a proper application made by someone authorized by the statute so to do, ..."
[1] Applying this illustration to the facts of the instant case, we find that the approval of all the creditors' claims by the court was obtained by appellant prior to the entry of the order of solvency, during which time the court had jurisdiction of the estate. It lost jurisdiction automatically by the entry of such order.
[2] Respondent next argues that appellant submitted the subject matter of the estate to the jurisdiction of the court by filing exceptions to the appraisement of the estate (for the purpose of state inheritance taxes) under the provisions of RCW 83.16.040. This statute provides the only manner for taking exceptions to the appraisement of the estate, made by the appraisers, for the purpose of state inheritance tax. By so doing, appellant was able to maintain the matter "in litigation" and to make a subsequent adjustment of the state inheritance tax in accordance with a settlement which was effected with the federal estate tax supervisor. This procedure was solely for the benefit of the estate and cannot be construed as an abdication by the executor of his nonintervention powers under the will and his submission to the general jurisdiction of the probate court.
*257 In State ex rel. Jakobsen v. Superior Court, 127 Wash 583, 221 Pac. 608 (1923), a claim against the estate was presented to the executor of a nonintervention will and was allowed by him. The legatees objected to the allowance of the claim and, with the consent of all concerned, the claim was submitted to the court by the executor. The court disallowed the claim and an action was commenced against the estate by the claimant. From an adverse judgment in favor of the claimant against the estate, the executor refused to appeal, although he had been advised by his court-appointed counsel that an appeal should be taken. The residuary legatees thereupon petitioned the superior court for an order directing the executor to appeal from that judgment. They alleged facts showing a probability of reversal, arbitrary and capricious conduct on the part of the executor, and that they were the only persons who had anything to gain or lose by the appeal. The trial court held that it had no jurisdiction over the subject matter of the estate. On appeal to this court, we quoted the material portion of Laws of 1917, chapter 156, § 92, p. 666 (Rem. Comp. Stat., § 1462), which reads:
"... If the person named in the will shall fail to execute the trust faithfully and to take care and promote the interest of all parties, then, upon petition of a creditor of such estate, or of any of the heirs, or of any person on behalf of any minor heir, it shall be the duty of the court to cite such person having the management of such estate to appear before such court, and if, upon hearing of such petition it shall appear that the trust in such will is not faithfully discharged, and that the parties interested, or any of them have been or are about to be damaged by such actual doings of the executor, then, in the discretion of the court, administration may be had and required as is now required in the administration of estates, ..."
In reversing the decision of the superior court, and in directing it to assume jurisdiction, we said, with reference to this section:
"... It is not a question here as to whether or not the superior court should direct the executor to appeal from the judgment establishing the claim, but whether or not the superior court shall assume jurisdiction over the management *258 and control of the estate to the extent of inquiring as to whether or not it is the duty of the executor to appeal from the judgment in the interest of the estate, which, as we have noticed, would be in the sole interests of these relators as residuary legatees...."
That decision cannot be so broadly interpreted as to sustain respondent's contention that the voluntary submission of a single issue by the executor of a nonintervention will is sufficient to invest the court with jurisdiction over the subject matter of the estate for all purposes. (See related comments, 16 Wash. L. Rev. 195.) The present case discloses the fallacy of respondent's contention because it would mean that, although the executor might determine that it would be in the best interests of the estate to file exceptions to the appraisement, he could only do so at the risk of his being held by the court to have surrendered to it the entire management and control of the estate for all purposes.
Respondent relies principally upon our decision in In re Brown's Estate, 129 Wash. 84, 224 Pac. 678 (1924), as supporting her assertion that the allowance of these fees under a nonintervention will is subject to the approval of the court. But the reason upon which that case was distinguished in In re Megrath's Estate, 142 Wash. 324, 253 Pac. 455, 256 Pac. 503 (1927), is equally applicable here. In the departmental decision, subsequently adhered to following a reargument en banc, we said:
"Our attention has been called to In re Brown's Estate [supra], where we held that under a non-intervention will the court could fix the attorneys fee, but an examination of that case will show that it is perfectly consistent with our present position, for the reason that in the Brown estate, the executors had applied to the court to fix the attorneys fee, and we held that, the executors having made such application, it was within the power of the probate court to fix the fees." (Italics ours.)
In the present case, appellant did not apply to the court to fix either the fee of its attorney or its own executor's fee.
The facts of the instant case are controlled by the principles applied in In re Holmgren's Estate, 189 Wash. 94, 63 *259 P. (2d) 504 (1937). There an estate having an approximate gross value of $49,000 was administered under the provisions of a nonintervention will. The executrix and executor had allowed themselves $5,000 and their attorneys $7,000 for their respective services. The legatees filed objections to the executor's final report and petition for a decree of distribution and petitioned the court to take over and continue the administration of the estate. The court overruled the legatees' objections, denied the request for further administration, and sustained the allowance of fees. The legatees appealed. Concerning the allowance of fees, we said:
"The question is not, in the first instance, the reasonableness of the fee, as the question is presented when there is an administration of an estate under the direction of the court, but whether the executrix and the executor have faithfully discharged their trust. In the section of the statute above mentioned [Laws of 1917, chapter 156, § 92, p. 666], it is provided that, if the person named in the will shall fail to execute the `trust faithfully' and take care and promote the interests of all the parties, then, upon petition of a creditor or heirs, it shall be the duty of the court to cite such person having management of the estate to appear, and if, upon hearing, it appears that the trust has not been `faithfully discharged,' then `in the discretion of the court' administration may be had as is now required in the administration of estates.
"The inquiry then must be directed as to whether the fees allowed to the attorneys are so large as to show that the executrix and the executor had not discharged the trust imposed upon them faithfully. In determining the amount of the attorneys' fee, there is no fixed standard, other than what is fair and reasonable for the services rendered. In determining this question, of necessity, every case must stand upon its own footing. [Citation.] In determining what is reasonable, it is proper to consider the time and labor required, the novelty and difficulty of the questions involved, the skill required to properly handle the matter, and the amount involved...." (Italics ours.)
[3] Are the fees paid to the attorneys and to the executor in the present case "so large as to show that the ... executor had not discharged the trust imposed upon ... [it] faithfully"? If the trial court so found (upon competent *260 and substantial evidence), then the court in its discretion could assume jurisdiction. If not, the court erred in exercising its discretion and assuming jurisdiction.
As previously stated, the court found:
"... the fees claimed and withheld both for the executor and the Attorneys is excessive to the point that this court must assume jurisdiction."
It is significant that the trial court did not find that appellant had been "recreant to its trust" or "had not discharged the trust imposed upon ... [it] faithfully." However, even if it be assumed arguendo that such finding is implicit in that which the court actually made, the record is devoid of factual support therefor.
The mere use of the word "excessive" by the trial court cannot change the basic facts so as to support an unwarranted assumption of jurisdiction. These facts are that there was an honest difference of opinion as to the proper amounts of compensation to be allowed. The executor, in good faith, believed that a fair fee for the services performed by it and its attorney was $7,500 each. The trial court ultimately arrived at the conclusion that the executor should have $4,125, and its attorneys $5,250 for their respective services. There is no evidence that the executor was motivated by any desire to receive more money than it honestly felt it was entitled to receive, that it acted fraudulently, or that it was faithless to its trust in making this charge for its services and in paying its attorneys the same amount.
[4] The record does not disclose any evidence upon which findings to that effect could have been predicated. A mere honest difference of opinion is not enough. Fraud is never presumed, but must be proved by clear, cogent, and convincing evidence. Here there was no evidence of faithlessness whatever, so there was not, and could not have been, a finding of fact of the kind necessary to permit the probate court to assume jurisdiction. Calling the fees charged "excessive" is not sufficient to vest jurisdiction where no intent to mulct the estate was proved or found.
Moreover, this conclusion of the trial court (labeled as finding of fact) is apparently based upon its finding that:
*261 "Testimony of local attorneys is to the effect that the fees claimed and withheld were excessive. The Court has elected to accept their testimony."
[5] Appellant claims that this finding is without evidenciary support. We agree. But, before examining the record, we note that, since all of respondent's evidence, and that of appellant (other than the testimony of appellant's trust officer and one of its attorneys), is based upon the testimony of disinterested expert witnesses, the rule applicable thereto is that stated in In re Schmitz, 44 Wn. (2d) 429, 268 P. (2d) 436 (1954), as follows:
"We are mindful of the rule announced in Peterson v. Schoonover, 42 Wn. (2d) 621, 622, 257 P. (2d) 209 (1953), that:
"`Our first duty is not to resolve a conflict of fact  that is the province of the trial judge. Our primary duty is to decide whether the opposing evidence exceeds in weight the evidence supporting the finding. If it does exceed in weight, then it can be said that the opposing evidence preponderates, and it is from the opposing evidence that a different finding springs.'
"The rule is based upon the theory that the trial court, having the witnesses before it, is usually in a better position to arrive at the truth than is the appellate court. There are situations, however, when the positions are at least equal. See Peters v. Dulien Steel Products, 39 Wn. (2d) 889, 239 P. (2d) 1055 (1952). The instant case is one of them. We are not concerned with the veracity and credibility of witnesses. The issue is whether certain expert opinions, based upon existing facts, should be given greater weight, and can be said to preponderate over other expert opinions, based upon the same facts. In such a situation, the opportunity of this court to study the exhibits, examine the figures, and consider the opinions of the experts is equal to that of the trial court." (Italics ours.)
See, also, McGuire v. United Brotherhood of Carpenters & Joiners of America, 50 Wn. (2d) 699, 314 P. (2d) 439 (1957).
With this rule in mind, we turn to the evidence adduced in support of the finding of fact above quoted. That finding is based upon the testimony of two practicing attorneys in Grays Harbor county, neither of whom had examined the bulky files compiled by appellant during the administration, *262 and readily admitted it. The opinions of these attorneys were given in response to hypothetical questions propounded by respondent's counsel as amplified upon cross-examination. One of the hypothetical questions covers less than two pages of transcribed testimony; the other covers less than three pages. Both of these attorneys were familiar with the minimum bar fee schedule in Grays Harbor county; both stated that an executor is customarily allowed one half of the sum allowed for attorney fees. However, one of these attorneys had never acted as such for a corporate executor. The other, in response to a question by the court, stated that "In some instances they have allowed the bank more than one-half of what was allowed the attorney." He further testified that "The banks are allowed usually more than one-half of what the attorneys are allowed...." (Italics ours.) But both of respondent's experts admitted that both the executor and its attorneys should be entitled to additional fees for extraordinary matters not contemplated in the usual administration. Since neither of respondent's experts had examined the files accumulated by appellant and its attorneys during the period of administration, they could not and did not estimate the additional compensation to which each was entitled. Nor did they, or could they, testify on the basis of personal examination of the files that the fees charged were "excessive."
[6] Hence, if the trial court's finding is interpreted to mean that the fees charged exceeded the minimum bar fee of Grays Harbor county, it is supported by the record. (Appellant had admitted as much, contending that the fees charged were reasonable in relation to the services performed.) But, if the finding be interpreted to mean that the fees charged are "excessive" or unreasonable in relation to the services performed, then it is unsupported by the evidence.
Opposed to the opinions expressed by respondent's experts, and in addition to the testimony of appellant's trust officer and one of its attorneys, three disinterested attorneys and the senior trust officer of a competing bank testified *263 on behalf of appellant. All of these four experts had examined appellant's records.
One of these attorneys was an active practitioner in Grays Harbor county since 1923, and was the chairman of the fee schedule committee of the Grays Harbor county bar association. He testified that he had had appellant's files in his possession for two or three hours; had conversed with appellant's trust officer and attorneys concerning the services performed; had examined the files. He testified that "it is the custom [in Grays Harbor county] where the bank is a corporate trustee to set up a fee that is commensurate with the attorney fee." He testified that a "fee of $8500.00 to $9000.00 would not be unreasonable" for appellant's attorneys and that "the fee of $7500.00 is fair and reasonable in the case of the [appellant-executor] bank."
A second attorney (who had practiced in Seattle continuously since 1927) testified that he had taken appellant's files to his "office and examined them thoroughly." He testified:
"In my opinion, a fair fee for the attorneys would be between $8000.00 and $10,000.00. I feel that a fee of between $8000.00 and $9000.00 would be adequate to compensate the executor."
A third attorney, who had also practiced in Seattle since 1927, testified by deposition that he had examined appellant's files and those of its attorneys; had conferred with appellant's trust officers and attorneys; that the minimum fee schedule of the Seattle bar would be "somewhat over $4,000; that an attorney's fee of over $7,000 and up to $8,000 would be a reasonable fee"; and that
"... in this case the executor's services should be worth approximately the same amount as the attorney's services because the various complications that the attorneys experienced were also experienced by the bank, ..."
The only representative of a corporate executor who testified in this case was the senior trust officer of a competing Seattle bank. He testified, by deposition, that he had conferred *264 with appellant's trust officer and had examined appellant's files; that
"The schedule of fees generally charged by trust departments in Seattle are those, of course, which are supposed to compensate it and return a reasonable profit and on that regular schedule of fees the ordinary charge for an estate of the value of the one we are discussing here would be in the neighborhood of $4,000.";
that "it is my opinion that we would charge a minimum fee of, roughly, twice the regular fee, give or take a few hundred dollars." When asked, "That brings you to a total fee that you would charge for similar services of how much?" This witness responded:
"In the neighborhood of $8,000. I might say, however,  and this is in retrospect  if an estate was offered to us and we could contemplate the complications that arose in this particular estate, I question whether we would contract to do it for $8,000."
All of appellant's expert witnesses had had extensive experience in dealing with estates comparable in size and character to that now before us.
As stated in In re Schmitz, supra:
"... The issue is whether certain expert opinions, based upon existing facts, should be given greater weight, and can be said to preponderate over other expert opinions based upon the same facts. In such a situation, the opportunity of this court to study the exhibits, examine the figures, and consider the opinions of the experts is equal to that of the trial court."
[7] From the foregoing review of the expert testimony, it is readily apparent that the opinions of appellant's expert witnesses are entitled to greater weight and preponderate over the opinions of respondent's experts. We think that the trial court erred in electing to accept the testimony of respondent's expert witnesses, neither of whom had examined appellant's files (to determine the quantity or quality of the services performed), to the exclusion of the opinions of every expert witness who had examined them.
Our discussion thus far has been directed to the expert opinion testimony in relation to the finding made by the *265 trial court, without reference to the evidence showing that the estate involved was complicated and required additional services over and above those usually contemplated for one of this value. While it is unnecessary to relate all of the numerous problems encountered by the executor and its attorneys in the administration of this estate, several deserve mention.
The principal assets of the estate consisted of (1) Mrs. Coates' home property in Aberdeen, Grays Harbor county; (2) summer cabin and timberland in Jefferson county; (3) undivided one-half interest in tract of timberland in Jefferson county; (4) three blocks of stock, 546 shares of Weyerhaeuser Timber Co., 40 shares of E.C. Miller Cedar Lumber Co., and 10 shares in a tugboat company; and (5) miscellaneous personal property.
In the course of the administration, the executor and its attorneys encountered unusual delays (due to circumstances beyond their control) in obtaining an audit of the Federal estate tax return. No final settlement of the state inheritance tax liability was possible until after the amount of the Federal tax was established. Without describing in detail the work performed in connection with the death taxes, the final result was a saving of approximately $7,000 in tax liability for the estate.
During the course of the administration of the estate, respondent was at various times represented by some ten different attorneys to whom the bank and its attorneys had to explain the existing status of the administration. Concerning this unusual situation, one of the bank's attorneys, in response to questions of the trial court, testified:
"BY THE COURT: Q. Mr. Barker, you testified that you had conferences with ten different attorneys. Do you know why? Do you have a bad heir on your hands, or did you start off wrong, or couldn't you sell yourself to her, or what was wrong? A. Well, of course, that is a matter of opinion. MR. DAY: I object to that question, Your honor. Q. Do you know why? A. I think I do. I think I do. This is, of course, purely a matter of speculation because no one has ever told me, but I have the feeling that Miss McGilicudy, unfortunately, just didn't seem to be the kind of person *266 who would believe anyone. I don't know to this day  I don't think that Miss McGilicudy has any ill feeling toward me personally. I certainly have none toward her. The fact remains, and I personally don't know, I don't know of a single thing that either Mr. Day or I have done, to my knowledge, that could have resulted in an antagonistic feeling on the part of Miss McGilicudy, and yet I sensed it was there because each attorney who called us prefaced his remarks by saying, `What in the world are you doing,' or words to that effect, `to Miss McGilicudy?' Well, certainly there was definitely a feeling of antagonism on her part toward us, or perhaps it was the bank. I am sorry, I can't define actually what is or has been in Miss McGilicudy's mind. Q. When these attorneys came to you, what did they want to know? A. Well, they wanted to know everything, so I just opened it up and told them. They wanted to know  Mr. Wright, for example, wanted to know who the Weyerhaeuser stock was sold to. Each one seemed to feel that we were, and when I say we I am putting myself in the same basket with Chris Johnson and the bank and Mr. Day. We had a job to do, which we were trying to do to the best of our ability, but at each turn it was made more difficult by reason of her antagonism. I will say this. I think it might be interesting. I know there are letters in the files that bear me out. Miss McGilicudy was appointed administratrix of the estate, she had an attorney, Mr. Manley. I think it is quite logical that when the will was found, an executor was appointed, and she knew it was her duty to close the estate and turn over the assets that she had in her possession as an officer of the court to the succeeding officer of the court. Now, the will was admitted to probate in December of 1952. It wasn't until March of 1953, I think it was March, 1953, three months later, that Miss McGilicudy finally turned over to the bank the securities, and there are letters there indicating that, and I think a letter directly from Mr. Stritmatter, I think, in which he proposes on behalf of Miss McGilicudy that she deposit the stock with the branch of the Peoples National Bank down here, and that they in turn would issue a receipt to the Seattle-First National Bank as executor that they were held for them, but she would not turn the certificates over to the executor. Why I don't know. It seemed to me that sort of an offer was very indicative of a feeling which I couldn't understand. To my knowledge I have never had quite such a relationship with an heir or a client. Of course, she isn't my client, but I have tried to treat her as such in so far as I have been able *267 to in every step through this proceeding, and I may say in spite of herself." (Italics ours.)
There is no evidence that any of these various attorneys found anything in the handling of the estate by appellant or its attorneys which, in their opinion, justified their attempting to have the executor removed. Each one of them, after investigating the situation, just faded out of the picture (except respondent's present counsel).
Another matter of which respondent complained in her petition was the sale by the executor of 450 shares of Weyerhaeuser Timber Company stock in October, 1953. These shares were sold through brokers in Seattle in the ordinary course of business. Thereafter, the market value of the shares increased very substantially. Respondent had proposed to the executor that interest and penalties on the death taxes be permitted to accrue after the expiration of the fifteen-month period and that the Weyerhaeuser stock be retained until a higher price could be obtained, and that the death taxes and accrued interest and penalties be then paid from the proceeds. She testified to unsuccessful attempts she had made to borrow money from the bank and other financial institutions for the purpose of preserving this asset. The bank, being individually liable for the death taxes, refused to delay the sale and respondent reluctantly agreed to the sale.
During the period of the administration, certain timberlands (in which the estate had an undivided one-half interest) were sold. The executor did not find the purchaser but did perform certain services in connection with the consummation of the sale. Also, there was an unusual amount of work required in fixing the value of the stock of a closely held corporation known as the E.C. Miller Cedar Lumber Company.
These facts are mentioned simply for the purpose of reflecting some of the factors which entered into appellant's decision that its attorneys and itself were each entitled to $7,500 for their services in this administration.
[8] The trial court, in its memorandum decision, expressed the view
*268 "... that when an executor accepts employment in Grays Harbor County, it must do so with at least one eye on the fee schedule in effect in the county."
It should also be noted that the record fails to show that the minimum bar fee schedule in Seattle is any different from that in effect in Grays Harbor county. In fact, considering the testimony of appellant's witnesses, above quoted, the schedules would appear to be about the same. But, assuming that the Grays Harbor schedule prescribes a lesser minimum fee than that in effect in Seattle, it should be remembered that both in the case of the executor and its attorneys the fee schedule prescribes the minimum. It does not establish a maximum fee, nor a median fee, and is not necessarily prescribing a reasonable fee in all cases. It is not a yardstick to which a lawyer or an executor must blindly and rigidly adhere.
Canon of Professional Ethics 12, 34A Wn. (2d) 129, 130, provides, in part:
"In fixing fees, lawyers should avoid charges which over-estimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all....
"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.
*269 "In determining the customary charges of the bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a bar association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.
"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade." (Italics ours.)
[9] Guided by this canon and the fact that the fees charged were well within the range of the only witnesses who had examined the records disclosing the services for which compensation was claimed, the following statement of this court in In re Holmgren's Estate, supra, seems particularly apt:
"... we are of the view that, while the allowance may be liberal, it is not such an amount as to show that the executrix and the executor had not faithfully executed their trust, and it is only in such a case that the superior court is authorized to take jurisdiction, in the exercise of its discretion...."
The proceedings in the trial court relative to the compensation of the executor and its attorneys (stated in chronological order) may be epitomized as follows:
June 25, 1956, the court overruled the executor's objections to the jurisdiction of the court to fix the fees.
August 16, 1956, the court heard testimony as to the nature and extent of the services rendered by the executor and its attorneys.
At this hearing, the court also permitted respondent to testify regarding events which occurred before appellant was appointed and had qualified as executor. These events had no bearing on the issue then before the court and to discuss them here would unduly lengthen this opinion. At the close of this hearing the court stated that it was satisfied that the executor's work, from the time it took charge of the estate until its completion, was carefully done and that "the welfare of the estate was kept in mind at all times."
September 25, 1956, the court heard the testimony of the various expert witnesses (above referred to) as to the *270 value of the services rendered by the executor and its attorneys and took the matter under advisement.
January 17, 1957, the court filed a twelve-page memorandum decision holding that the fees charged and paid to the executor and its attorneys should be reduced in the respective amounts of $3,375 and $2,250, and that the total of these sums ($5,625) should be repaid to the estate.
The decree entered in accordance with this memorandum decision is reversed and remanded with instructions to approve the allowances for executor's fees and for attorneys' fees made by the executor.
Appellant shall recover its costs in this court from respondent.
It is so ordered.
FINLEY, and ROSELLINI, JJ., concur.
HILL and OTT, JJ., concur in the result.
WEAVER, C.J. (dissenting)
I cannot agree with appellant's contention, as stated in the majority opinion, that
"... in the absence of its application to the court for a determination of these fees  and there has been none  the probate court is without jurisdiction to determine them, or to either approve or disapprove the amounts paid by appellant to itself or its attorneys."
If this be the rule, then an executor and an attorney, probating a nonintervention will, might charge any amount they chose without concern for judicial review.
The disposition of this case turns upon the application of RCW 11.68.030 to the facts. The statute provides:
"If the person named in the will fails to execute the trust faithfully and to take care and promote the interest of all parties, then, upon petition of a creditor of the estate, or of any of the heirs, or of any person on behalf of any minor heir, the court shall cite such person to appear before it, and if, upon hearing of the petition it appears that the trust in such will is not faithfully discharged, and that the parties interested, or any of them, have been or are about to be damaged by the doings of the executor, then, in the discretion of the court, administration may be had and required *271 as is required in the administration of estates, ..." (Italics mine.)
The trial court's finding that "the fees claimed and withheld both for the executor and the Attorneys is excessive to the point that this court must assume jurisdiction" serves a dual capacity.
First, it presents a question of law: Under the statute, is the finding sufficient to invoke the discretion of the trial court to assume jurisdiction in probation of a nonintervention will after an order of solvency has been entered? I believe that it is. I do not believe that the trial court abused its discretion in assuming jurisdiction when the pleadings and proof showed that fees, which were almost two and one-half times in excess of the minimum schedule, had been paid from the estate assets.
I do not interpret this conclusion to be in conflict with our decision in In re Holmgren's Estate, 189 Wash. 94, 63 P. (2d) 504 (1937), where the trial court, in the exercise of its discretion, refused to take jurisdiction. Therein, we said:
"... In determining the amount of the attorneys' fees, there is no fixed standard, other than what is fair and reasonable for the services rendered. In determining this question, of necessity, every case must stand upon its own footing. In re Fetterman's Estate, 183 Wash. 410, 48 P. (2d) 638." (p. 97)
In the instant case, the trial court, in the exercise of its discretion under the statute, assumed jurisdiction. I find nothing in the record which convinces me that it abused its discretion.
Second, the trial court's finding that the fees retained were excessive presents a question of fact. The trial judge observed in his memorandum opinion that he was
"... inclined to feel that when an executor accepts employment in Grays Harbor County, it must do so with at least one eye on the fee schedule in effect in the county."
No practical benefit would result from a further review of the evidence concerning the reasonableness of the fees. It is sufficient to state that the court found that
*272 "Testimony of local attorneys is to the effect that the fees claimed and withheld were excessive. The Court has elected to accept their testimony." (Italics mine.)
There is competent and substantial evidence in the record to support this finding of fact; hence, this court, having only appellate jurisdiction, cannot disturb it.
The judgment should be affirmed.
MALLERY, FOSTER, and HUNTER, JJ., concur with WEAVER, C.J.
NOTES
[1] Reported in 347 P. (2d) 875.