IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

RAY E. GABELEIN and )
LAURIE J. GABELEIN, ) No. 70527-0-I
husband and wife, )
 )
 ) DIVISION ONE
Respondents, )
 )
v. )
 )
 ) PUBLISHED OPINION
DIKING DISTRICT NO.1 of ISLAND )
COUNTY of the State of Washington, ) FILED: June 30, 2014
 )
Appellant. )

SPEARMAN, C.J. — Diking District No. 1 of Island County raises money to maintain its dikes and drainage facilities through annual assessments on benefited property owners within the District. Property owners Raymond and Laurie Gabelein filed suit against the District to challenge the methodology by which the District developed its 2012 benefit assessment roll and calculated the drainage assessment against their property. The trial court ruled that the District failed to properly construe and apply chapter 85.18 RCW in determining the assessment methodology underlying its 2012 benefit assessment roll and granted summary judgment in favor of the Gabeleins. The trial court also awarded attorney fees to the Gabeleins based on a finding that the District committed prelitigation misconduct. We affirm.

## FACTS

Diking District No. 1 of Island County (District) was established in 1914 to construct and maintain a system of dikes and related facilities, pursuant to RCW 85.05.090. At that time, the Island County Superior Court determined that 460 acres of land within the District would be benefited by the dikes. Assessments were allocated according to benefits received per acre.[1] In 1931, the District constructed a drainage system, with construction and maintenance assessments based on benefits received per acre, again pursuant to RCW 85.05.090. The District continues to maintain separate assessment rolls for diking and for drainage.

In 1951, the Legislature enacted chapter 85.18 RCW, "Levy for Continuous Benefits – Diking Districts." In 1960, pursuant to chapter 85.18 RCW, the District changed its method for determining diking benefits "from the acreage of benefited parcels to the true and fair value of benefited parcels, such that thereafter, levies for diking assessments were spread over benefited properties within the district in proportion to the true and fair value of such properties. . . ." Clerk's Papers (CP) at 622. Drainage assessments, however, continued to be levied in proportion to acreage.

Then, in 1986, the District's three-member Board of Commissioners (Board) passed a resolution to set drainage benefits pursuant to chapter 85.18 RCW, as it had for diking benefits 26 years earlier.[2] The Board determined that "[t]he continuous base

---

[1] RCW 85.05.090 provides that the petition to establish a new diking district shall set forth "the number of acres owned by each landowner, and the maximum amount of benefits per acre to be derived by each landowner set forth therein from the construction of said proposed improvement. . . ."

[2] Specifically, it determined that "the continuous base benefits which each of the properties on the roll of the district are receiving and will receive from the continued operation and functioning of the drainage improvements of the district are equal to 100% of the true and fair value of such property in money." CP at 627.

2

benefits which each of the properties (including land and buildings) within the benefited area of the district are receiving and will receive from the continued operation and functioning of the drainage improvements of the district are equal to 100% of the true and fair value of such property in money. . . ." CP at 625. It concluded that "[t]he cost of continued functioning of the district should be paid through levies of dollar rates made and collected according to chapter 85.18 RCW against the land and buildings protected by the district's drainage improvements, based upon the determined base benefits received by such land and buildings as set forth above." CP at 626. The 1986 resolution expressly stated that the new assessment roll would include lots on the waterfront side of Sunlight Beach Road, which over the years had become a beachfront community with high property values.

Meanwhile, residential and commercial development within the watershed contributed to increasing amounts of runoff from impervious areas. By 2004, the drainage system was at maximum capacity. Therefore, in 2004, the District entered into a contract to purchase a new pump, and the Board adopted a five-year assessment to pay for it. The pump went into operation in 2008. However, the pump was controversial among the District's residents.

Citizens in Support of Useless Bay Community, a nonprofit corporation composed of property owners within the District who opposed the Board's recent decisions, filed lawsuits against the District in 2009, 2010, and 2011.[3] In 2011, the Island County Superior Court issued a joint ruling on cross-motions for summary judgment in the 2009 and 2010 lawsuits. The trial court upheld the 2004 pump contract

---

[3] Another pump-related lawsuit, filed against the District in 2008, was apparently dismissed before the trial court ruled on the merits.

but invalidated the 2008 and 2010 resolutions attempting to resurrect prior base benefit rolls because the District failed to provide notice and public hearings as required by statute. Accordingly, the trial court ruled that the challengers' argument that the District's benefit assessment approach constituted an unconstitutional ad valorem tax was moot and would not be ripe for adjudication until the District followed the proper process. The trial court specified that the District must enter "Findings of Fact supported by competent evidence establishing the actual benefit provided to properties benefited by [the District's] improvements, which must be measured by the difference in value for each parcel of property before and after receiving the benefit, if any." CP 386.

The District appealed. But in February 2012, Board member Ray Gabelein, a local farmer, was defeated in his bid for re-election by Thomas Kraft, a waterfront property owner. Kraft joined waterfront property owner John Shepard on the Board. Kraft and Shepard thus formed a "new majority" of waterfront property owners on the three-member Board. The 2009 and 2010 lawsuits settled soon thereafter and the Board withdrew its appeal of the court's rulings.

In October 2012, the Board adopted a new base benefit roll pursuant to chapter RCW 85.18. The 2012 Roll utilized a new method for determining drainage continuous base benefits and apportioning costs among benefited properties. This method was based on the District's determination that only acreage at or below five feet in elevation was benefited by District drainage facilities.[4] Only 127.77 acres of the District's total acreage met this criterion. The District then defined drainage "continuous base benefits"

---

[4] Specifically, the Resolution states that "[t]he acreage of property at or below the five foot NAVD88 elevation as depicted on the TMI Land Surveying Map dated 5/03/2012, will be used to apportion the continuous base benefit to such properties within the District afforded such protection." CP at 765.

4

for a given benefited parcel based on the following formula: benefited acreage of parcel, divided by total benefited acreage, multiplied by $1000. The Board then allocated annual drainage operating costs among benefited properties by multiplying the continuous base benefit for a given parcel by total operating costs to yield the annual assessment for that parcel.[5]

Ray and Laurie Gabelein own a 60.53 acre parcel of property within the District. The parcel is enrolled in Washington's "current use" program for farm and agricultural lands, a program under which property taxes are determined according to the fair market value of the land as it is currently used, rather than considering its potential for development. Chapter 84.34 RCW. The Island County Assessor determined that the total fair market value of the Gabeleins' property is $35,627, based on the three different categories of land it contains. The driest and most valuable part of the property, consisting of approximately 27 acres, is designated "summer pasture" worth $34,517. Two acres are designated "swamp/marsh" worth $800. And the remaining 31 acres are designated "waste land" so wet it is typically not usable for the majority of the year. This portion of the property is worth only $310 or $10 per acre.

The District determined that 25.44 acres of the Gabeleins' parcel are at or below 5 feet in elevation. This equals 20.137% of the total amount of District acreage at or below 5 feet in elevation. Thus, under the District's new methodology, the continuous base benefit for the Gabelein parcel is 20.137% x $1000 = $201.37. In other words,

---

[5] The Board utilized a different criterion in determining which properties were benefited by its diking facilities: those with 25% or more of their surface area, or improvements thereon, at or below "the 100 year water surface elevation for salt water inundation of 11.98 feet per NAVDD88." CP at 765. It then apportioned continuous base benefits according to "true and fair value" of the benefited property, rather than adopting the new method it developed for determining drainage base benefits.

$201.37 of every $1000 in drainage costs were imposed on the Gabeleins' parcel. Annual estimated drainage operating costs for 2013 are $77,212. The result: an annual assessment on the Gabeleins' parcel in the amount of 0.20137 x $77,212 = $15,548. This is nearly half of the parcel's total fair market value of $35,548, imposed based upon the wettest, lowest-value portion of the parcel.

In October 2012, pursuant to RCW 85.18.100, the Gabeleins filed a petition for judicial review of the 2012 Roll. After the District submitted a certified transcript of the proceedings to be reviewed, the Gabeleins moved for summary judgment. The trial court granted summary judgment to the Gabeleins. It concluded that (1) the District did not correctly construe and apply chapter 85.18 RCW in adopting its 2012 benefit assessment roll; (2) the amount of the annual assessment on the Gabeleins' property materially exceeds the amount of the drainage continuous base benefits conferred by the District's drainage facilities; and (3) the amount of the annual assessment on the Gabeleins' property for drainage continuous base benefits materially exceeds the value of the only acres that benefit. The trial court also awarded attorney's fees to the Gabeleins based on the District's pre-litigation misconduct for failing to follow the language in the 2011 Order. The trial court denied the District's motion for reconsideration. The District now appeals.

### DISCUSSION

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co., 115 Wn.2d 506, 515-16, 799 P.2d 250 (1990); CR 56(c). RCW 85.18.130 provides that the trial court "shall determine whether the board has acted within its discretion and has correctly construed and applied the law." A trial court abuses its

6

discretion if its decision is "manifestly unreasonable or based on untenable grounds." Grandmaster Sheng-Yen Lu v. King County, 110 Wn. App. 92, 99, 38 P.2d 1040 (2002). Statutory interpretation is a question of law reviewed de novo. Kustura v. Dep't of Labor and Indus., 169 Wn.2d 81, 87, 233 P.3d 853 (2010).

As a preliminary matter, the parties dispute the proper scope of the record on review. RCW 85.18.110 requires the District to file "its certified transcript containing such portion of the roll as is subject to review, any written objections thereto filed with the board by the person reviewing before said roll was adopted, and a copy of the resolution adopting the roll." The District argues that judicial review pursuant to a writ of review under chapter 85.18 RCW is limited to the administrative record that was before the Board when it adopted the 2012 Roll. It contends that the trial court erred in considering additional materials, and that this court should exclude them. "When the petition involves allegations of procedural irregularities or appearance of fairness, or raises constitutional questions, the court may consider evidence outside the record." Responsible Urban Growth Group v. City of Kent, 123 Wn.2d 376, 384, 868 P.2d 861 (1994). Because the Gabeleins raised constitutional questions, the trial court ruled that it could consider additional materials. We agree, and consider the entire record on review.[6]

---

[6] The District also relies on Abbenhaus v. City of Yakima, 89 Wn.2d 855, 859-60, 576 P.2d 888 (1978) for the proposition that the record on review should be limited to the record that was before the Board when it adopted the 2012 Roll. The District is incorrect. Abbenhaus involved a challenge to an assessment pursuant to chapter 35.44 RCW. The Washington Supreme Court concluded that the 1957 amendments to RCW 35.44.250 were intended to limit judicial review to the record of the proceedings before the municipality. Abbenhaus, 89 Wn.2d at 859-60. But RCW 85.18.120 and .130 closely track the pre-amendment language of RCW 35.44.230. Abbenhaus does not control.

Assessment Methodology

The District adopted the 2012 Roll pursuant to chapter 85.18 RCW. This legislation, enacted in 1951, declared that "there is a direct relationship ... between the continuous functioning of [diking and drainage] districts and the fair value of the lands and buildings thereon...thus afforded protection." RCW 85.18.005. It allows diking districts to fund the cost of continuous functioning "through levies of dollar rates made and collected according to this chapter against the land and buildings thus protected, based upon the determined base benefits received by such land and buildings." RCW 85.18.010. The District is required to "make an estimate of the costs reasonably anticipated to be required for the effective functioning of such district during the ensuing year" which "shall be levied by the regular taxing agencies against the base benefits to the lands and buildings within such district as shown by the then complete roll..." RCW 85.18.160. "Continuous base benefits" are to be determined as follows:

> [T]he board will sit to consider said roll and to determine the continuous base benefits which each of the properties thereon are receiving and will receive from the continued operation and functioning of such district, which shall in no instance exceed one hundred percent of the true and fair value of such property in money, will consider all objections made thereto or to any part thereof, and will correct, revise, lower, change, or modify such roll as shall appear just and equitable; that when correct benefits are fixed upon said roll by said board, it will adopt said roll by resolution as establishing, until modified as hereinafter provided, the continuous base benefit to said protected lands and buildings against which will be levied and collected dollar rates to provide funds for the continuous functioning of said district.

RCW 85.18.030.

The term "continuous base benefit" is not defined in chapter 85.18 RCW, nor does it appear in any other Washington statute. And there are no reported cases interpreting the term.

The District argues that chapter 85.18 RCW does not prescribe any particular method the Board is required to use to determine continuous base benefits. Rather, it contends that the Legislature expressly left the determination of continuous base benefits to its discretion. Thus, although the Board chose to expressly proceed under chapter 85.18 RCW, it claims to have been "inspired" to create its new drainage assessment methodology based on chapter 85.38 RCW, "Special District Creation and Operation." Enacted in 1985, chapter 85.38 RCW provides an alternative method for existing diking and drainage districts to determine what the statute refers to as "special assessments," which receive "special benefits" from a special district's operations and facilities. RCW 85.38.150(1). RCW 85.38.150(3) provides for the establishment of "assessment zones" in which each zone reflects a different relative ratio or benefit or use from the special district's facilities. Notably, these zoning determinations are made not by the special district itself, but rather by the legislative authority of the county where the special district is located, starting with a preliminary system of assessment prepared by the county's engineer. RCW 85.38.160. "Special assessments" are then determined based on the dollar value of benefit per acre or per improvement and the assessment zone where the property is located. RCW 85.38.150(2). RCW 85.38.160(2) requires that the special district mail notice to each property owner subject to special assessments:

> The mailed notice shall indicate the amount of assessment on the lot or parcel that, together with all other assessments in the system of assessment, would raise one thousand dollars. The mailed notice shall indicate that this assessment amount is not being

9

imposed, but is a hypothetical assessment that, if combined with all
other hypothetical assessments in the system of assessment,
would generate one thousand dollars, and that this hypothetical
assessment is proposed to be used to establish a system or
systems of assessment for the special district.

On this basis, the Board apportioned the annual drainage budget among benefited
acreage by articulating continuous base benefits as a dollar rate per $1,000 of budgeted
costs. The statute continues:

Where a special district is currently imposing special assessments and a
property owner's property is subject to these special assessments, the
mailed notice to this property owner shall also use the hypothetical
special assessment in conjunction with the total special assessments
imposed by the special district in that year to provide a comparison
special assessment value to the property owner. This notice shall
indicate that the comparison special assessment value is not being
imposed, and should be considered for comparative purposes only.

The trial court did not err in concluding that the Board misconstrued and
misapplied chapter 85.18 RCW in adopting the 2012 Roll. Article VII, section 9 of the
Washington Constitution allows the Legislature to delegate taxing power to all municipal
corporations, including diking districts. Larson v. Seattle Popular Monorail Authority, 156
Wn.2d 752, 757 n.4, 131 P.3d 892 (2006). Unlike general ad valorem taxes, which are
levied for the benefit of the entire taxing district, special assessments for local
improvements inure to the benefit of specific land. Heavens v. King County Rural
Library Dist., 66 Wn.2d 558, 563, 404 P.2d 453 (1965).

It is the basic principle and the very life of the doctrine of special
assessments that there can be no special assessment to pay for a
thing which has conferred no special benefit upon the property
assessed. To assess property for a thing which did not benefit it
would be pro tanto the taking of private property for a public use
without compensation, hence unconstitutional. Though the right to
levy special assessments for local improvements is referable solely
to the sovereign power of taxation, our state Constitution, art. 7, § 9,

10

expressly limits its exercise to assessments of property benefited. In re Shilshole Ave., 85 Wash. 522, 537, 148 P.781 (1915).

Accordingly, special assessments for special benefits cannot substantially exceed the amount of special benefits without, to the extent of such excess, amounting to a taking of private property for public use without compensation. Hargreaves v. Mukilteo Water Dist., Snohomish County, 43 Wn.2d 326, 331-32, 261 P.2d 122 (1953). And "assessments for the public benefit [must] be distributed with substantial equality over all property of like kind and similarly situated with reference to the subject matter of the assessment." In re Eighth Ave. Northwest in City of Seattle, 77 Wash. 570, 576, 138 P.10 (1914).

These constitutionally based principles apply broadly to special assessments, including those for dikes and drainage, regardless of which statute governs the assessment process:

> Special assessments to pay for local public improvements benefiting specific land are of ancient lineage. They have been held valid for the construction and improvement of streets, curbs, gutters, sidewalks, and for the installation of sanitary and storm sewers, drains, levees, ditches, street lighting, and water mains. Rhyne, Municipal Law, p. 717. All such assessments have one common element: they are for the construction of local improvements that are appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the municipality. The benefit to the land must be actual, physical and material and not merely speculative or conjectural.

Heavens v. King County Rural Library Dist., 66 Wn.2d 558, 563, 404 P.2d 453 (1965).

Washington's original diking district statutes were sustained against constitutional challenge based on the proposition that the charge for improvements were to be in proportion to the benefits accruing thereto, and that no property could be charged in excess of those benefits. Foster v. Commissioners of Cowlitz County, 100 Wash. 502,

512, 171 P.539 (1918); Kadow v. Paul, 274 U.S. 175, 181, 47 S. Ct. 561, 71 L. Ed. 782 (1927) ("[w]hen the operation of [Washington's diking district statute] works uniformly as against all parts of the assessment district and results in a higher cost of the improvement, and an increased assessment on all the owners of land who have paid, it violates no constitutional right of theirs as long as their benefits continue respectively to exceed their individual assessments." (Citing Orr v. Allen, 248 U.S. 35, 39 S. Ct. 223, 63 L. Ed. 109 (1918)).

The District places great emphasis on the fact that it followed statutory notice and public hearing requirements in the process of adopting the 2012 Roll. It also points to numerous reports, materials, and documents it relied on in making its determination. But this does not cure the fundamental problem: there is no evidence that the Gabeleins' property received any benefit whatsoever. The $15,548 assessment on the Gabeleins' property was based on the 25.44 acre portion which lies at or below 5 feet. Most of this acreage is designated "waste land" with a fair market value of $10 per acre, even with the District's drainage improvements. It is difficult to understand how property that the Island County Assessor describes as "waste land" that is "even wetter than wetlands" is receiving any benefit at all, let alone a benefit worth $15,548. (CP at 657-58) These property value determinations were based on the Gabelein parcel's enrollment in Washington's current use program pursuant to chapter 84.34 RCW. The District is not free to ignore them in an attempt to justify levying an assessment based on the value of acres that plainly do not benefit from its drainage facilities.

The District claims that chapter 85.18 RCW gives the Board discretion to be "inspired" by chapter 85.38 RCW in determining continuous base benefits. We disagree.

12

The Board's reliance on chapter 85.38 RCW to develop a methodology for determining continuous base benefits is problematic for a number of reasons. First, as used under RCW 85.38.160(2), the special assessment per $1000 of budgeted costs is hypothetical. It is designed solely to provide notice to property owners for comparative purposes. But here, the Board adopted the methodology to determine the actual continuous base benefits. Second, the methodology is misleading because it nowhere indicates the actual amount of the assessment, which, as in this case, will likely be several times the amount of the continuous base benefit. Third, as noted above, under RCW 85.38.160(2), the system of assessment is determined by a disinterested party, the county engineer, whereas here, the Board, consisting of individuals with a financial interest in the outcome, determines the system of assessments.[7] We cannot conclude that chapter 85.18 RCW grants the Board discretion to pick and choose among those provisions of chapter 85.38 RCW it finds favorable, without also being constrained by its restrictions. The legislative intentions of either statutory scheme are not well served by the Board cherry picking those provisions of chapter 85.38 RCW which suit its purposes but ignoring those provisions which do not.

Moreover, the Board's methodology does not determine benefits to the assessed properties in any meaningful way. "Continuous base benefits" do not necessarily reflect the amount of money to be collected from protected property, but rather serve as the base for apportionment of the annual budget across benefited properties. Chapter 85.18 RCW describes "continuous base benefits" as the basis upon which to levy "dollar rates

---

[7] Although not raised by the parties, we note that RCW 85.18.180 prohibits the Board from using "the processes provided for raising revenue under any other law,. . ." with certain exceptions not relevant here. Thus, the Board's reliance on chapter 85.38 RCW may be misplaced in any event.

13

to provide funds for the continuous functioning of said district," with the requirement that continuous base benefits not exceed the true and fair value of the property. Instead of determining the benefits accruing to each parcel, the Board essentially created an assessment zone comprised of acreage lying at or below 5 feet in elevation, declared that all of those properties incurred a benefit, and allocated costs among them as a percentage of total acreage meeting this criterion. Multiplying this percentage by $1000 to convert the resulting percentage figure into dollar terms does not make the result a valid determination of benefits. RCW 85.38.160(2), the provision that allegedly inspired the Board, requires that a special assessment district mail notices to each property owner showing a hypothetical assessment that would raise $1000 for comparative purposes only. The Board's process bears little substantive resemblance to this provision.

The Board's method for defining continuous base benefits also leads to absurd results. Because this figure is expressed as percentage of the total benefited property multiplied by $1000, it will never exceed $1000. Yet in the Gabeleins' case, it resulted in an assessment that is dramatically higher than the supposed "continuous base benefit" of $201.37. Under this interpretation, RCW 85.18.030, which requires that continuous base benefits "shall in no instance exceed one hundred percent of the true and fair value of such property in money,. . ." is rendered practically meaningless. Notably, the Board's methodology resulted in a drainage assessment on a different parcel that actually exceeded its fair market value. Statutes should be construed to avoid results that are absurd and unconstitutional. Ryan v. Dep't of Social and Health Servs., 171 Wn. App. 454, 467, 287 P.3d 629 (2012).

The District also argues that the trial court erred in enjoining the County from ever collecting more than $201.37 per year from the Gabeleins' property for its share of annual drainage operating costs. This argument misconstrues the trial court's order, which stated that the County cannot impose an annual assessment for drainage that exceeds $201.37 "based on the District's benefit assessment roll dated October 23, 2012." The trial court did not limit the amount of the levy in perpetuity; it merely limited the amount of any future levy that is based on the 2012 Roll. This order does not prevent the District from adopting a new benefit assessment roll, based on different methodology, and assessing the Gabeleins accordingly.[8]

We hold that the District's assessment methodology misconstrues chapter 85.18 RCW and fails to comport with basic constitutional requirements governing all special assessments, including diking districts. The resulting annual assessment on the Gabeleins' property materially exceeds the amount of the drainage continuous base benefit conferred by the District's drainage facilities, and materially exceeds the value of the only acres that benefit.

The next question is whether chapter 85.18 RCW requires continuous base benefits to be calculated as the mathematical difference in the value of property before and after receiving the benefit of the District's facilities. In its 2011 letter opinion regarding the previous litigation, the trial court stated that "continuous base benefits" are a special benefit accruing to property as a result of a local improvement, and that "[t]he

---

[8] RCW 85.18.130 provides that "if the Board does not act within its discretion or fails to correctly construe and apply the law, the trial court may "change, confirm, correct, or modify the values of the property in question as shown upon the roll. . . ." Because the Board's methodology for calculating continuous base benefits was fundamentally flawed, the trial court could not fix the problem simply by correcting the value for the Gabeleins' property. Based on the District's assertion that the continuous base benefits for the Gabeleins' property amounted to $201.37, the trial court accepted the Gabeleins' offer to pay this amount as their annual drainage assessment. This was not an abuse of discretion.

amount of the special benefit accruing to property as a result of a local improvement is the difference between the fair market value of the property immediately after the special benefits have accrued and the fair market value of the property before the special benefits have accrued." Doolittle v. City of Everett, 114 Wn.2d 88, 93, 786 P.2d 253 (1990) (citing In re Schmitz, 44 Wn.2d 429, 434, 268 P.2d 436 (1954)). The court then concluded that the former Board's decision to set continuous base benefits at no greater than one hundred percent of assessed value was not illegal, reasoning that flooded lands have no fair market value, and that the Board could properly determine benefits to be something less than one hundred percent. And in the 2011 Order, the trial court ruled that the District must measure benefits "by the difference in value for each parcel of property before and after receiving the benefit." CP at 386. However, the trial court's summary judgment order in this case rejected the District's assessment methodology for the 2012 benefit roll without expressly reiterating its rulings in the previous litigation or otherwise specifying how to conduct assessments in the future.[9]

The District argues that allocating continuous base benefits in proportion to benefited acreage is not prohibited by chapter 85.18 RCW. It contends that the before-after valuation rule described in Doolittle and Schmitz applies only to special assessments imposed pursuant to chapter 35.44 RCW, not continuous base benefits for diking districts pursuant to chapter 85.18 RCW. It further argues that using before-after

---

[9] As a preliminary matter, the District asserts that the trial court's rulings on this issue were actually based on its rulings in the 2011 Order regarding the previous litigation. The District thus contends that the trial court lacked subject matter jurisdiction because the Gabeleins' written objections to the Board made no mention of the trial court's 2011 rulings. We disagree. In a letter ruling denying the District's motion for reconsideration, the trial court specified that although its award of attorney's fees to the Gabeleins was based on the District's failure to comply with prior rulings, its decision to grant summary judgment to the Gabeleins was not. For the same reason, the District's argument that summary judgment was improper because the prior rulings were "dicta" also lacks merit.

valuation to set continuous base benefits for drainage would be prohibitively difficult because the drainage system has been in place for many years and has been expanded over time.

The Gabeleins apparently agree that "[a] precise mathematical approach to valuation would not be consistent with the circumstances for which chapter 85.18 RCW was adopted." Respondents' Brief at 32. They further acknowledge that "Chapter 85.18 RCW is not intended as a financing mechanism on a, 'one time only' basis, as would be consistent with a value conferred before and after. . . ." But they argue that, in order to comply with constitutional and statutory requirements, the determination of continuous base benefits must be a computation of benefits, not just an allocation of costs. They contend that setting continuous base benefits at no greater than one hundred percent of fair market value, as the trial court described in its 2011 letter opinion, is consistent with the before-after valuation standard.

Accordingly, we decline to specify a particular methodology the Board must use to establish future benefit assessment rolls. The Board has a certain degree of discretion in making this determination. We emphasize, however, that any method for calculating continuous base benefits must comport with the fundamental constitutional requirements that "[s]pecial assessments for special benefits cannot substantially exceed the amount of special benefits" and that "assessments for the public benefit [must] be distributed with substantial equality over all property of like kind and similarly situated with reference to the subject-matter of the assessment." Hargreaves, 43 Wn.2d at 331-32; In re Eighth Ave., 77 Wash. at 576. The method must also comport with the statutory requirement that "continuous base benefits shall in no instance exceed one

17

hundred percent of the true and fair value of such property in money. . . ." RCW 85.18.030. Accordingly, the methodology must be based on a determination of benefits, not merely an allocation of costs.

One way to establish continuous base benefits would be to determine the difference between the fair market value of the property before and immediately after the special benefits have accrued, as in Doolittle. Another would be to set continuous base benefits at or below one hundred percent of the assessed value, as described by the trial court in its 2011 letter opinion. It would also be possible to develop a methodology based on benefits per acre that complied with these requirements. There may be other methods as well. But to pass constitutional muster any method adopted must be based on a determination of the special benefits accruing to the subject property, not merely an allocation of costs.

## Attorney Fees

The District argues that the trial court erred in awarding attorney's fees to the Gabeleins based on prelitigation misconduct. The standard of review for an award of attorney's fees is abuse of discretion. Greenbank Beach and Boat Club, Inc. v. Bunney, 168 Wn. App. 517, 524, 280 P.3d 1133, review denied, 175 Wn.2d 1028, 291 P.3d 254 (2012).

"A trial court may award attorney fees only where there is a contractual, statutory, or recognized equitable basis." Riss v. Angel, 80 Wn .App. 553, 563, 912 P.2d 1028 (1996) (quoting Miotke v. Spokane, 101 Wn.2d 307, 338, 678 P.2d 803 (1984)). "CR 11 and our inherent equitable powers authorize the award of attorney fees in cases of bad faith." In re Recall of Pearsall-Stipek, 136 Wn.2d 255, 267, 961 P.2d 343 (1998). Prelitigation misconduct is a recognized type of bad faith. Greenbank, 168 Wn. App. at

525. "The term refers to obdurate or obstinate conduct that necessitates legal action to enforce a clearly valid claim or right." Id. at 526. "Prelitigation misconduct, to be sanctionable by an order to pay the other party's attorney fees, necessarily involves some disregard of judicial authority." Id. at 526.

In 2009 and 2010, waterfront property owners challenged the former Board's assessment methodology, arguing that continuous base benefits are a kind of special benefit to be computed using before-and after-analysis. In 2011, the trial court upheld the District's overall assessment approach, but concluded that the District violated due process by altering its assessment method without the required public notice. CP 377-80. The trial court also agreed with the challengers that assessments had to be based on "before and after" property values. CP 382. Accordingly, the trial court ruled that the challengers' argument that the District's benefit assessment approach constituted an unconstitutional ad valorem tax was moot and would not be ripe for adjudication until the District followed proper process:

> The Petitioners ... declaratory judgment claim that DD-1's benefit assessment at 100% of true and fair value constitutes an unconstitutional tax rather than a benefit assessment is rendered moot by part 3 of this judgment and will not be ripe for adjudication until such subsequent time as DD-1 provides notice, holds hearings, and enters Findings of Fact supported by competent evidence establishing the actual benefit provided to properties benefited by DD-1 improvements, which must be measured by the difference in value for each parcel of property before and after receiving the benefit, if any.

CP at 386 (emphasis added).

The Gabeleins argue that the trial court properly awarded attorney fees because the District committed prelitigation misconduct by ignoring the requirement to utilize "before and after" valuation in computing benefit assessments. They contend that if the

19

District had used before-and-after valuation in developing the 2012 Roll, they would not have needed to bring this lawsuit. The District argues that it was not required to follow language in the 2011 order stating that continuous base benefits "must be measured by the difference in value before and after receiving the benefit from the District's drainage improvements" because (1) the underlying claim was moot and not ripe for adjudication, thereby rendering the language "dicta," and (2) the trial court's requirement that the District utilize before-and-after valuation was incorrect on the merits.

Although this is a procedurally unusual situation, we conclude that the trial court did not abuse its discretion in awarding attorney's fees to the Gabeleins. Trial courts do not make dicta. "A statement is dicta when it is not necessary to the court's decision in a case" and as such is not binding authority. Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 215, 304 P.3d 914, review denied 178 Wn.2d 1022, 312 P.3d 651 (2013)). The concept has no application to a party to whom a trial court's language was directed. Here, the District was a party to the litigation which culminated in the final judgment quoted above. That litigation directly addressed the question of whether the District must apply "before and after" valuation in calculating continuous base benefits. The trial court's letter opinion and final judgment answered this question in the affirmative. The District, having abandoned its appeal of the court's ruling, was not free to ignore it.

The District, citing Greenbank, further contends that attorney's fees cannot be awarded based on the decision to adopt the 2012 Roll because that decision was the basis of the action brought in the superior court. In Greenbank, the trial court awarded attorney's fees to a homeowners' association based on defendants' bad faith conduct in

building their home in violation of the association's restrictive covenants. The Court of Appeals reversed, holding that "to allow an award of attorney fees based on bad faith in the act underlying the substantive claim would not be consistent with the rationale behind the American Rule regarding attorney fees." Greenbank, 168 Wn. App. at 527 (citing Shimman v. Int'l Union of Operating Eng'rs Local 18, 744 F.2d 1226, 1231 (1984)). But here, unlike Greenbank, the fee award was based on a disregard of judicial authority in prior litigation involving the same parties.

The Gabeleins seek attorney fees and costs on appeal. We may grant such an award "[I]f applicable law grants to a party the right to recover reasonable attorney fees or expenses. . . ." RAP 18.1(a). "Fees may be awarded as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such fees." Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009) (citing W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985)). Here, the only basis on which to award fees to the Gabeleins would be the District's prelitigation misconduct below. We decline to award fees on appeal on this basis.

Affirmed.

Spearman, C.J.

Cox, J.

WE CONCUR: