

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| VANISHING PRICES, LLC, a Washington limited liability company, | ) ) ) | No. 74257-4-I |
|  | ) | DIVISION ONE |
| Respondent, | ) ) |  |
| v. | ) ) |  |
| BELLA'S VOICE, a Washington nonprofit corporation; JORDAN HOFFMAN-NELSON, an individual; and YVETTE HOFFMAN, an individual, | ) ) ) ) ) | UNPUBLISHED FILED: September 6, 2016 |
| Appellants. | ) ) ) |  |

Cox, J. — Bella's Voice, Jordan Hoffman-Nelson, and Yvette Hoffman (collectively "Bella's Voice") appeal the trial court's summary judgment order and judgment for Vanishing Prices, LLC in this action on a promissory note. The price paid for the sale of a thrift shop business and its assets, from which the promissory note arose, is a genuine issue of material fact for trial. But there are no genuine issues of material fact for Bella's Voice's counterclaims. We affirm in part, reverse in part, and remand for further proceedings.

The parties signed three agreements to evidence the sale of a thrift shop business and its assets. All of the documents are dated July 1, 2014. The documents include a Business Sale Agreement, Personal Property Bill of Sale, and Promissory Note in the amount of $50,000.

The parties dispute the facts regarding their negotiations leading up to the signing of these three documents. Bella's Voice claims that Vanishing Prices agreed to donate the thrift shop. Vanishing Prices claims that Bella's Voice agreed to purchase the thrift shop for the $50,000 amount stated in the note.

Vanishing Prices sued Bella's Voice for failure to pay the note in accordance with its terms. Bella's Voice answered and asserted several counterclaims. They include contract breach, fraudulent misrepresentation, conversion, intentional interference with a business relationship, negligence, and a consumer protection violation. Vanishing Prices moved for summary judgment, and the trial court granted the motion in its entirety. The trial court denied Bella's Voice's motion for reconsideration.

Thereafter, Vanishing Prices moved for entry of judgment and an award of reasonable attorney fees on the basis of a provision in the note. The trial court awarded reasonable attorney fees and entered its judgment.

Bella's Voice appeals.

## PROMISSORY NOTE

Bella's Voice argues that there are genuine issues of material fact whether the promissory note is enforceable. We agree.

"Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[1] "A genuine issue of material fact exists if 'reasonable minds could differ on

---

[1] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); CR 56(c).

the facts controlling the outcome of the litigation.'"[2] We consider "all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party."[3] We review de novo a trial court's grant of summary judgment.[4]

*Other Agreements Affecting Note*

Our analysis starts with the recognition that this promissory note is a negotiable instrument under the Uniform Commercial Code.[5] As such, applicable provisions of this code govern.

RCW 62A.3-117 is a code provision that applies here. This provision is titled "Other agreements affecting instrument."[6] It states:

> Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, **the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued** or the obligation is incurred in reliance on the agreement or **as part of the same transaction giving rise to the agreement.** To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.[7]

---

[2] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 339 P.3d 635 (2014).

[3] Scrivener, 181 Wn.2d at 444.

[4] Id.

[5] See RCW 62A.3-104.

[6] RCW 62A.3-117.

[7] Id. (emphasis added).

Here, it is undisputed that the parties entered into a transaction on July 1, 2014 that was evidenced by three documents, all of which have the same date. The promissory note ("the instrument" under RCW 62A.3-117) was one of these documents. The other two documents were the Business Sale Agreement and the Personal Property Bill of Sale ("separate agreement[s] of the obligor[s]" under RCW 62A.3-117). All documents dealt with the same subject matter: sale of the thrift shop business and its assets. Thus, the promissory note is "part of the same transaction giving rise to the [two other agreements]" under RCW 62A.3-117.

Bella's Voice essentially argues that enforceability of the promissory note is "nullified" under RCW 62A.3-117 in two respects. One respect is by the two other agreements executed on July 1, 2014 between it and the sellers: the Business Sale Agreement and the Personal Property Bill of Sale. Specifically, Bella's Voice contends that the terms in those two other agreements directly conflict with the provision in the note that creates an obligation to pay $50,000.

Specifically, the Business Sale Agreement states that the seller, Vanishing Prices, "desires to sell and the Buyer [Bella's Voice] desires to buy the business of a certain Thrift Store . . . and all assets thereof . . . ."[8] The agreement then states:

> **The total purchase price for all fixtures, inventory, furnishings and equipment is $10.00 Dollars** payable as follows: (a) $10.00 paid in cash; certified or bank checks, as a deposit upon execution of this Agreement, (b) **The additional value of all**

---

[8] Clerk's Papers at 233.

4

***fixtures, inventory, furnishings, and equipment shall be
considered a donation.***[9]

The agreement also states that the property under the agreement "shall be conveyed by a standard form Bill of Sale, duly executed by the Seller."[10]

The Personal Property Bill of Sale describes the property Vanishing Prices sold to Bella's Voice. The agreement also states that the "full purchase price for Goods is $10.00" and that Bella's Voice has paid the full purchase price.[11] The agreement also states that "All fixtures, inventory, furnishings, and equipment are considered a donation, $10.00 is the consideration required to validate [this] transaction."[12]

These two agreements, part of the same transaction as the note, create a genuine issue of material fact as to the price of the sale of the business and its assets. Is the price $50,000, as stated in the note? Or is the price $10 plus a donation of any value over that amount, as stated in the two other agreements? These are genuine issues of material fact for trial.

This conclusion is subject to the first clause of RCW 62A.3-117 that addresses evidence of "contemporaneous or previous agreements." We discuss this clause later in this opinion.

Bella's Voice next argues that the promissory note is also "nullified" under RCW 62A.3-117 by the parties' prior oral agreements. Specifically, it contends

---

[9] Id. (emphasis added).

[10] Id.

[11] Id. at 237.

[12] Id. at 238.

5

that the business and its assets were to be donated under the terms of the parties' oral agreements that preceded the July 1, 2014 delivery of the note. Thus, according to Bella's Voice, the $50,000 obligation signed on July 1, 2014 lacks new consideration because of the alleged prior oral agreements to transfer the business and its assets.

There is evidence in the record to support the argument that the parties' prior oral discussions may have constituted an agreement to transfer the business and its assets for something other than the $50,000 amount stated in the note. The terms and conditions of the Business Sale Agreement and the Personal Property Bill of Sale are consistent with this argument. So, too, is the sworn testimony of certain witnesses. These are, arguably, genuine issues of material fact for trial.

But this conclusion is also subject to the first clause of RCW 62A.3-117 that addresses evidence of "contemporaneous or previous agreements" that we now discuss.

As the first clause of RCW 62A.3-117 recognizes, the operation of the rule is "[s]ubject to applicable law regarding exclusion of proof of contemporaneous or previous agreements." Explanatory comment 2 to the provision states:

> The effect of merger or integration clauses to the effect that a writing is intended to be the complete and exclusive statement of the terms of the agreement or that the agreement is not subject to conditions is left to the supplementary law of the jurisdiction pursuant to Section 1-103.[13]

---

[13] RCW 62A.3-117 cmt. 2.

Here, the issue is whether the promissory note represents the final agreement of the parties in light of the two other written agreements and the other evidence in the record. This is a question of parol evidence.

This court considered a similar question in <u>Equitable Life Leasing Corp. v. Cedarbrook, Inc.</u>[14] A question before the court in that case was whether the trial court abused its discretion in admitting evidence of the parties' contemporaneous oral agreement.[15] The agreement allegedly gave the lessee the option to purchase equipment that was the subject of a written lease.[16] This court couched the answer to the question in terms of the parol evidence rule. After quoting the rule, this court stated:

> [The parol evidence rule] is not a rule of evidence, but one of substantive law. Thus, prior or contemporaneous negotiations and agreements are said to merge into the final, written contract, and any of these, even if admitted without objection, is rendered incompetent and immaterial by operation of the rule.
>
> However, the parol evidence rule only applies to a writing intended by the parties as an "integration" of their agreement, *i.e.*, a writing intended as a final expression of the terms of the agreement. In determining this preliminary factual question of whether the parties intended the written document to be an integration of their agreement, the trial court must hear all relevant, extrinsic evidence, oral or written. If, after hearing all the evidence the court determines that the writing is the final and complete expression of the parties' agreement—*i.e.*, completely integrated— then the extrinsic evidence is disregarded. If, however, the court finds that the parties intended the writing to be a final expression of the terms it contains but not a complete expression of all the terms agreed upon—*i.e.*, partially integrated—then the terms not included in the writing may be proved by extrinsic evidence only insofar as they are not inconsistent with the written terms. Parol evidence of a

---

[14] 52 Wn. App. 497, 761 P.2d 77 (1988).

[15] <u>Id.</u> at 504.

[16] <u>Id.</u>

7

contemporaneous oral agreement is not necessarily excluded by an integration clause which provides that the writing constitutes the parties' entire agreement.[17]

In this case, there is no evidence in this record to show whether the three documents are integrated to express the final agreement of the parties. As Equitable Life Leasing Corp. makes clear, this factual question must first be determined by the trial court hearing all relevant evidence. The court must then make a determination whether, in particular, the promissory note is an integrated document.

In short, there are genuine issues of material fact for trial. Summary judgment was not appropriate.

We have determined that summary judgment on the promissory note was improper. We next address certain additional issues because they will recur on remand.

The first question is whether the promissory note lacks consideration. Bella's Voice argues that a genuine issue of material fact exists whether there is consideration for the promissory note. We agree, in part.

"Every contract must be supported by a consideration to be enforceable."[18] Consideration consists of "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in

---

[17] Id. at 505 (citations omitted).

[18] King v. Riveland, 125 Wn.2d 500, 505, 886 P.2d 160 (1994).

exchange. Before an act or promise can constitute consideration, it must be bargained for and given in exchange for the promise."[19]

The contract at issue in this case is the promissory note. Under the above legal principles, the signing and delivery of a note may be given in exchange for consideration, which may include an "act." Such an act may include the asset transfer in this transaction. Assuming that the parties' transaction closed on July 1, 2014 when the parties signed the documents on that date, there was consideration for the signing of the note. The transfer of the assets to the buyer, Bella's Voice, constitutes that consideration.

Bella's Voice confuses consideration with the dispute over the price for the transfer of the business and its assets. They are not the same. There is a legitimate dispute over the price, as we have already discussed in this opinion. But based on the assumption we stated in the prior paragraph, there is no reasonable basis to dispute that Bella's Voice's signing and delivery of the note was given in exchange for transfer of the thrift shop business and its assets.

On the other hand, we acknowledge that a dispute whether new consideration supported Bella's Voice's giving of the note does exist. That may arise if the trial court determines there was a binding prior oral agreement inconsistent with the terms expressed in the final written documents. That is a determination that this trial court may make on remand.

---

[19] Id.

Vanishing Prices also argues that a note's unambiguous language prevails over contemporaneous agreements, relying on Jenkins v. Karlton[20] and Leininger v. Anderson.[21] Those cases from other jurisdictions do not address the controlling principles of RCW 62A.3-117 that we have already discussed in this opinion. Accordingly, they are not persuasive.

*Signature by Representation*

Another issue that will recur on remand is whether Bella's Voice, the nonprofit corporation, is also bound under the promissory note. This question is also controlled by the Uniform Commercial Code. Specifically, RCW 62A.3-401 and RCW 62A.3-402 dictate the answer to this question.

In relevant part, RCW 62A.3-401, titled "Signature," states:

(a) A person is not liable on an instrument *unless* (i) the person signed the instrument, or (ii) *the person is represented by an agent or representative who signed the instrument and the signature is binding on the represented person under RCW 62A.3-402.*[22]

In relevant part, RCW 62A.3-402, titled "Signature by representative," states:

(a) If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the "authorized signature of the represented person" and the represented person is liable on the instrument, whether or not identified in the instrument.

---

[20] 329 Md. 510, 529, 620 A.2d 894 (1993).

[21] 255 N.W.2d 22, 32 (Minn. 1977).

[22] (Emphasis added.)

While the trial court granted summary judgment on this issue, there are genuine issues of material fact. The statutes we just cited show that those issues center on the representative capacity of those who signed the note.

Here, the first paragraph of the Promissory Note states:

> [T]he undersigned, Yvette Hoffman & Jordan Hoffman-Nelson, dba Bell[a]'s Voice a non-profit (the "Maker"), hereby promises to pay to the order of Michael & Toni Brown, dba Vanishing Prices ("Payee").[23]

Hoffman and Hoffman-Nelson signed only their names on the signature lines as "Maker[s]" and "Borrower[s]."[24] There is no descriptive language indicating Hoffman's and Hoffman-Nelson's capacity, such as "shareholder" or "d.b.a. Bella's Voice."

Based on the guidance we provide in this opinion, the trial court will be in a position to decide whether these signers also bound Bella's Voice, the nonprofit corporation. We express no opinion on this question. The trial court will decide this issue in the first instance.

Vanishing Prices next argues that Bella's Voice is liable on the note because Bella's Voice, Hoffman, and Hoffman-Nelson are "one in the same," relying on Losh Family LLC v. Kertsman.[25] Reliance on that case is misplaced.

That case did not address the provisions of the Uniform Commercial Code that control here. Moreover, that case was an application of the principle that

---

[23] Clerk's Papers at 230.

[24] Id. at 231.

[25] 155 Wn. App. 458, 228 P.3d 793 (2010).

11

where an agreement contains language binding an individual signer, "additional descriptive language added to the signature does not alter the signer's personal obligation."[26] That is not this case here. The personal obligation of those who signed this note is not at issue. Rather, the issue is whether their corporation is also bound.

Vanishing Prices claims that Bella's Voice did not timely raise this argument below in accordance with CR 59(b). Because that rule does not apply here, this argument is not convincing.

CR 59(b) states that "[a] motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision . . . ."

Here, after the trial court filed its Memorandum Decision, Vanishing Prices moved for reasonable attorney fees and entry of judgment. Four days later, Bella's Voice raised this argument in its opposition to that motion. The trial court then entered its judgment.

Because Bella's Voice did not move for a new trial or for reconsideration after the trial court entered the judgment, CR 59(b) is irrelevant.

## COUNTERCLAIMS

Bella's Voice next argues that the trial court improperly granted summary judgment on its counterclaims. We hold there are no genuine issues of material fact for any of the counterclaims.

---

[26] Id. at 464.

*Breach of Contract*

Bella's Voice argues that summary judgment for Vanishing Prices was improper because genuine issues of material fact exist whether Vanishing Prices breached the contract and whether that breach excused Bella's Voice's performance under the contract. There is no separate claim for relief arising from a determination that the note is unenforceable. For example, there is no request for any damages should the trial court decide that the note is unenforceable. Accordingly, there is no need to discuss this claim any further.

*Fraudulent Misrepresentation*

Bella's Voice also argues that the trial court improperly granted summary judgment on its fraudulent misrepresentation counterclaim. We again disagree.

A fraudulent misrepresentation may render a contract voidable.[27] The claimants must establish that they had a right to rely on the representation.[28] "While justifiable reliance is normally a question of fact, summary judgment is appropriate if reasonable minds could reach but one conclusion."[29]

"A party to whom a positive, distinct and definite representation has been made is entitled to rely on that representation and need not make further inquiry concerning the particular facts involved."[30] But "a party has no right to rely on an

---

[27] Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 390, 858 P.2d 245 (1993).

[28] Jackowski v. Borchelt, 174 Wn.2d 720, 738, 278 P.3d 1100 (2012).

[29] Cornerstone Equip. Leasing, Inc. v. MacLeod, 159 Wn. App. 899, 905. 247 P.3d 790 (2011).

[30] Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc., 64 Wn. App. 661, 679-80, 828 P.2d 565 (1992).

oral representation that contradicts unequivocal written evidence that demonstrates the falsity of the alleged representation."[31]

Cornerstone Equipment Leasing Inc. v. MacLeod[32] controls here. There, Ray MacLeod signed a promissory note, promising to pay Cornerstone.[33] After MacLeod refused to make more payments, Cornerstone commenced suit, and the trial court granted summary judgment against MacLeod.[34]

MacLeod appealed, arguing that Cornerstone's President, James Chevigny, fraudulently induced him to sign the promissory note.[35] MacLeod claimed that Chevigny assured him that the promissory note was just "'paperwork' that would be used only for 'internal purposes.'"[36]

This court concluded that MacLeod unreasonably relied on Chevigny's alleged representation as a matter of law.[37] This court stated the general rule that "a party has no right to rely on an oral representation that contradicts unequivocal written evidence that demonstrates the falsity of the alleged representation."[38] This court then determined that it was "patently unreasonable to freely sign a document acknowledging a debt based on an oral assurance that

---

[31] Cornerstone Equip. Leasing, Inc., 159 Wn. App. at 905.

[32] 159 Wn. App. 899, 247 P.3d 790 (2011).

[33] Id. at 903.

[34] Id. at 904.

[35] Id. at 902, 904.

[36] Id. at 904.

[37] Id. at 906.

[38] Id. at 905.

the document is meant for 'internal purposes' only."[39] This court further stated that MacLeod was an experienced business person, could have retained counsel, and that Chevigny's oral representations "directly contradicted the written terms of the loan."[40] Thus, this court affirmed.[41]

Here, Bella's Voice also claims that it relied on Vanishing Prices's promise that the note was for its records and that it would not enforce the note. The trial court concluded that Bella's Voice unreasonably relied on Vanishing Prices's promise according to MacLeod. The trial court was correct.

Bella's Voice signed "a document acknowledging a debt based on an oral assurance that the document [wa]s meant for [records] only."[42] This alleged oral representation "directly contradicted the written terms of the [Promissory Note]" because the note established a promise to pay $50,000.[43] Thus, the plain language in the note demonstrates the falsity of Vanishing Prices's alleged promise that the note was for its records and that it would not enforce the note.

In sum, Bella's Voice "ha[d] no right to rely on an oral representation that contradicts unequivocal written evidence that demonstrates the falsity of the alleged representation."[44] Accordingly, the trial court properly granted summary

---

[39] Id. at 906.

[40] Id.

[41] Id. at 911.

[42] Id. at 906.

[43] Id.

[44] Id. at 905.

judgment because reasonable minds could reach but one conclusion—that Bella's Voice unreasonably relied on Vanishing Prices's alleged oral representation. Because the absence of proof of this essential element makes the other elements immaterial to the outcome, summary judgment was proper.

Bella's Voice argues that it did not freely sign the promissory note. It claims that Hoffman and Hoffman-Nelson were not in a "position to forfeit the time and expense they incurred" and had no "resources or any other way out." This argument does nothing to detract from the analysis we already discussed. It is merely a business justification, not part of a valid defense to the claim.

### Consumer Protection Act Violation

Bella's Voice also argues that the trial court improperly granted summary judgment on its Consumer Protection Act counterclaim. We disagree.

The Consumer Protection Act (CPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[45] To succeed on a CPA claim, a claimant must establish "an unfair or deceptive act . . . that affects the public interest," along with other factors not relevant here.[46] Whether a particular action constitutes a CPA violation is reviewable as a question of law.[47]

---

[45] RCW 19.86.020.

[46] Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015).

[47] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

With respect to the public interest element, we must first determine whether this case involves a consumer transaction or a private transaction.[48] Ordinarily, a breach of a private contract affecting only the contracting parties does not affect the public interest.[49] In a private transaction, "it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest."[50] The trier of fact determines whether the public has an interest in any given action.[51]

Washington courts consider four factors to assess the public interest element in a private dispute: "(1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have unequal bargaining positions."[52] These factors are not dispositive, and a claimant need not establish

---

[48] Travis v. Wash. Horse Breeders Ass'n, Inc., 111 Wn.2d 396, 406-07, 759 P.2d 418 (1988).

[49] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790, 719 P.2d 531 (1986).

[50] Id.

[51] Id. at 791.

[52] Trujillo, 183 Wn.2d at 836.

all of the factors.[53] Rather these factors "'represent indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact.'"[54]

We conclude that a fair consideration of all of these factors shows that Bella's Voice failed to satisfy the public interest element. Nothing in this record shows a "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion."[55] There was a sale of the thrift shop business and its assets. There is no evidence that any other sales are likely to occur. Thus, there is no genuine issue of material fact regarding this CPA counterclaim. Vanishing Prices was entitled to judgment as a matter of law.

Bella's Voice argues that "there was a public risk" due to Vanishing Prices's advertisement and that a genuine issue of material fact exists for this claim. That alone is insufficient to overcome our conclusion that there was and only could be one sale of the thrift shop business and its assets.

*Negligence*

Bella's Voice next argues that the trial court improperly granted summary judgment on its negligence counterclaim. It claims that genuine issues of material fact exist whether the parties had tort duties independent from the contract. We disagree.

Under the independent duty doctrine, a party to a contract has a tort remedy if the injury "'traces back to the breach of a tort duty arising

---

[53] Id.

[54] Rush v. Blackburn, 190 Wn. App. 945, 969, 361 P.3d 217 (2015) (quoting Hangman Ridge, 105 Wn.2d at 791).

[55] Hangman Ridge Training Stables, Inc., 105 Wn.2d at 790.

18

independently of the terms of the contract.'"[56] This court decides as a matter of law whether a party had an independent tort duty and must answer three inquiries: "Does an obligation exist? What is the measure of care required? To whom and with respect to what risks is the obligation owed?"[57]

Here, Vanishing Prices owed no independent tort duty to Bella's Voice. And Bella's Voice fails to specify an independent tort duty. Thus, the independent duty doctrine precludes Bella's Voice's negligence counterclaim.

Bella's Voice argues that "the parties' extensive dealing, negotiations, and close relationship leading up to the . . . contract" create genuine issues of material fact whether an independent duty existed. But as previously stated, Bella's Voice failed to specify an independent tort duty.

## ATTORNEY FEES

### At Trial

Bella's Voice argues that Vanishing Prices was not entitled to attorney fees or costs. We hold that the attorney fees award at trial was premature. Likewise, the costs award was premature.

A trial court may award attorney fees "'as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such

---

[56] Donatelli v. D.R. Strong Consulting Eng'rs, Inc., 179 Wn.2d 84, 92, 312 P.3d 620 (2013) (quoting Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 389, 241 P.3d 1256 (2010)).

[57] Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc., 170 Wn.2d 442, 449, 243 P.3d 521 (2010) (plurality opinion).

fees.'"[58] Whether a party is entitled to an award of attorney fees is a question of law that we review de novo.[59]

In this case, the promissory note provided:

> In the event any payment under this Note is not paid when due, the Maker agrees to pay, in addition to the principal and interest hereunder, reasonable attorneys' fees not exceeding a sum equal to 15% of the then outstanding balance owing on the Note, plus all other reasonable expenses *incurred by Payee in exercising any of its rights and remedies upon default.*[60]

The trial court awarded Vanishing Prices attorney fees and costs. Because the enforceability of the note has not yet been finally determined, reliance on this provision as a basis for the award is premature.

Bella's Voice argues that the trial court improperly awarded Vanishing Prices attorney fees. It specifically argues that Vanishing Prices did not incur such fees due to its pro bono representation. This argument is without merit.

This is an unreasonably narrow reading of this fee shifting provision. Additionally, denial of fees based on the nature of representation is unwarranted "unless a statute expressly prohibits fee awards to pro bono attorneys."[61] A fee award based on the prevailing party in this litigation is not barred.

---

[58] Gabelein v. Diking Dist. No. 1 of Island County, 182 Wn. App. 217, 240, 328 P.3d 1008 (2014) (quoting Thompson v. Lennox, 151 Wn. App. 479, 491, 212 P.3d 597 (2009)).

[59] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

[60] Clerk's Papers at 231 (emphasis added).

[61] Council House, Inc. v. Hawk, 136 Wn. App. 153, 160, 147 P.3d 1305 (2006).

The award of costs is a matter of statute.[62] Generally, the award of such costs depends on who prevails. Because that has not yet been determined, the award of costs is premature.

To the extent that Bella's Voice argues that Vanishing Prices's costs are limited because such costs were not incurred, that argument is also without merit. The advance of costs—in this case the filing fee and whatever other amounts were part of the $339 total awarded—is not precluded because the law firm advanced them on behalf of its client. There is simply no showing that these amounts were not "incurred." Arguments to the contrary are not well taken.

*On Appeal*

Vanishing Prices requests attorney fees on appeal based on RCW 4.84.330 and RAP 18.9. Because this appeal is not frivolous and a prevailing party has not, as yet, been determined, we deny an award of attorney fees.

RAP 18.9(a) provides for attorney fees if a party "files a frivolous appeal." "An appeal is frivolous if there are no debatable issues [up]on which reasonable minds might differ and it is so totally devoid of merit that there is no reasonable possibility of reversal."[63] "'An appeal that is affirmed merely because the arguments are rejected is not frivolous.'"[64]

---

[62] See Ch 4.84 RCW.

[63] Ha v. Signal Elec., Inc., 182 Wn. App. 436, 456, 332 P.3d 991 (2014), review denied, 182 Wn.2d 1006 (2015).

[64] Ensley v. Mollmann, 155 Wn. App. 744, 760, 230 P.3d 599 (2010) (quoting Halvorsen v. Ferguson, 46 Wn. App. 708, 723, 735 P.2d 675 (1986)).

RCW 4.84.330 provides that the prevailing party in a contract case shall be awarded attorney fees and costs incurred to enforce the provisions of the contract.

Here, Bella's Voice's appeal of the summary judgment is not frivolous. There are debatable issues, which we have already explained in this opinion.

And it is premature to award Vanishing Prices attorney fees on appeal as it has not yet prevailed in this case. We note that RAP 18.1(i) permits an award of attorney fees after remand. The trial court is authorized to award fees on appeal as it deems appropriate.

We affirm the summary judgment against Bella's Voice on its counterclaims. We reverse the summary judgment enforcing the promissory note and the award of attorney fees and costs. We remand for further proceedings. We also deny Vanishing Prices's request for attorney fees on appeal.

Cox, J.

WE CONCUR:

Trickey, A.C.J.

Becker, J.